## ARTHUR GUINNESS, SON & CO. v. OSCAR VON BERNUTH, Inc.

## SAME v. BOHEMIAN HOP & MALT CO., Inc.

District Court, S. D. New York.
March 8, 1923.

Masten & Nichols, of New York City (George O. Redington and Winthrop A. Wilson, both of New York City, of counsel), for complainant.

Max Frieder, of New York City, for defendants.

AUGUSTUS N. HAND, District Judge.

Complainant sues each of the above defendants for an injunction and accounting because of alleged unfair competition. The offense relied on is the use by the defendants of the words "Dublin Stout" in connection with a malt extract sold by the defendants. Motions are made for preliminary injunctions upon facts practically identical in each of the above cases except that the defendant in the first case claims to be liquidating and to have abandoned the business of selling the extract prior to the commencement of the suit.

The affidavits amply establish that the complainant has for years manufactured stout in Dublin and that it sold it widely in this country prior to the days of prohibition. They also establish without contradiction that "Dublin Stout" was a name applied to complainant's goods and could refer to no other. Such a situation would call for injunctive relief if the goods sold were similar and complainant was able to trade here now. The defendants do not, as I understand it, dispute this, but say that they are immune from attack because: (1) They have a registered trade-mark for "Dublin Stout XXX"; (2) the complainant never used the words "Dublin Stout XXX" as a trade-mark; (3) if the labels containing nothing but the words "Dublin Stout XXX" infringed, they have been modified so as to read "DUBLIN $\frac{\text{xxx}}{\text{Style}}$ STOUT," and as so modified are literally true, and hence cannot involve unfair trade; (4) defendants have never manufactured or sold a malt product of any kind containing more than one-half of 1 per cent. alcohol, whereas complainant's stout has about 6 per cent.; consequently defendant's goods are entirely unrelated to Guinness Stout and any unfair competition is impossible; (5) complainant cannot, and no longer does, sell stout, nor has it ever sold a malt extract in this country.

■ These defenses might as original questions have been difficult, but in the development of the law of unfair competition they have been for the most part disposed of in the courts by decisions that seem unanswerable.

The registration of "Dublin Stout" under the Trade Mark Act would give the defendants no more than a prima facie title (section 6 of act of 1920 [15 U.S. C.A. § 126], and section 23 of act of 1905 [15 U.S.C.A. § 103]), which can have no value if the complainant has acquired a prior right to the use of the name or to protection against the misleading use of it by another. The same rule obtains as to corporate names. Hudson Tire Company, Inc., v. Hudson Tire & Rubber Corporation (D.C.) 276 F. 59.

■ It is true that defendants' labels do not resemble complainant's in form or color and that complainant's labels do not contain the inscription "Dublin Stout XXX," but they contain the words "Guinness's Extra Stout Dublin," and the proof seems ample that "Dublin Stout" has acquired through many years of use by the public a secondary meaning which points unmistakably to the famous brew of the complainant. Geographical names will be protected by a court of equity under such circumstances. Elgin National Watch Co. v. Illinois Watch-Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Scandinavia Belting Co. v. Asbestos & Rubber Works (C.C.A.) 257 F. 937; French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247; Nims on Unfair Competition, p. 399. The fact that the literal use of the words "Dublin Stout" originated with the public rather than with the complainant or upon its labels should not alter the situation. Their goods have long been known in the trade by that name, and they will be injured and the public will be misled by the use of these words by another.

The defendant in the case of Scandinavia Belting Co. v. Asbestos & Rubber Works, supra, attempted to avoid a charge of unfair competition by the introduction of the word "type" upon its cartons, but the designation was nevertheless held to be misleading and injurious and an injunction was granted.

■ The contention that defendants are not guilty of unfair trade because complainant has only sold stout and has never sold a malt extract is plausible but unsound. Both stout and malt extracts are malt products and food products. If "Dublin Stout" unmistakably refers to complainant's goods, the public would naturally infer that Dublin Stout Extract came from complainant's plant. To use these words in relation to goods sold in this country by others than Guinness is misleading. The affidavits indicate that the

extract is fitted and designed to be used as a compound in making "home brew," somewhat resembling Guinness' Stout with an alcoholic content far in excess of one-half of 1 per cent. and quite inferior in quality to Dublin Stout. This tends to give complainant the reputation of being connected with an inferior grade of goods and of conniving at violation of the Volstead Act (27 U.S.C.A. § 1 et seq.). Both results are injurious and unfair. The instructions as to the use of the defendants' extract plainly invite the user to make an ale of substantial alcoholic content. The complainant is entitled to protection of its trade-name in respect to related products. Aunt Jemima Mills Co. v. Rigney & Co. (C.C.A.) 247 F. 407, L.R.A. 1918C, 1039; Anheuser-Busch, Inc., v. Budweiser Malt Products Corporation (D. C.) 287 F. 243, opinion by Judge Mack filed in Southern District of New York, September 27, 1921. Judge Mack's opinion in the last case inevitably follows from the decision of the Court of Appeals in this Circuit in Aunt Jemima Mills Co. v. Rigney & Co., supra, and is an interesting and conclusive argument in support of the complainant's position here.

The complainant is unable to sell stout in this country at the present time, but it is neither impossible nor unlikely that the law may be changed so as to permit importation for medicinal purposes. It may also itself put on the market a malt extract. It should be protected in either event from a form of advertising which misleads the public about its goods and may lead to the belief that it is violating the law.

Injunctions pendente lite are granted in each case upon filing bonds in the sum of $1,000.