The **LONDONTOWN MANUFACTURING COMPANY, Plaintiff,**

v.

**CABLE RAINCOAT COMPANY, Defendant.**

**No. 68 Civ. 2087 MIG.**

United States District Court, S. D. New York.

March 5, 1974.

Nims, Howes, Collison & Isner, New York City, for plaintiff by Oliver P. Howes, and Kenneth R. Umans, New York City, of counsel.

Rosenman, Colin, Kaye Petschek, Freund & Emil, New York City, for defendant by Ambrose Doskow, New York City, and Owen F. Clarke, Jr., Boston, Mass., of counsel.

GURFEIN, District Judge:

This is a case that turns on a vowel. The plaintiff and the defendant are competitors in the manufacture of raincoats. The defendant uses the trademark "Smug." It would also like to use "Smog." The plaintiff does not object to the defendant's using "Smug" but has gone to the expense of a lawsuit to prevent it from using "Smog." Similarly the defendant has gone to expense to fight for its right to "Smog" rather than "Smug."

The plaintiff seeks to enjoin the defendant's use of the trademark "Smog" for raincoats. It claims that "Smog" infringes its registered trademark "London Fog" as well as the alleged unregistered marks "The Fog" and "Fog." No damages are claimed.

There is federal jurisdiction under the Lanham Act (15 U.S.C. § 1051 et seq.) as well as under 28 U.S.C. § 1332 by reason of diversity of citizenship. Pendent jurisdiction with respect to the alleged unregistered marks on the ground of unfair competition exists under 28 U.S.C. § 1338.

The defendant denies infringement and unfair competition. It contends that the words "The Fog" and "Fog" have not been used by the plaintiff as trademarks and have, in any event, not acquired a secondary meaning identifying them with the raincoats sold by the plaintiff. It contends further that there is no likelihood of confusion between the trademark "Smog" and either the registered trademark "London Fog" or the claimed designation "The Fog" or "Fog."

The parties have stipulated as follows: (1) The plaintiff's trademark "London Fog" was registered in the United States Patent Office on March 8, 1955, Reg. No. 603,047, is valid and in effect, and the plaintiff has advertised and sold raincoats under the trademark "London Fog" in interstate commerce

since 1953. (2) The defendant began to advertise and sell raincoats under the trademark "Smog" in February 1968, applied for registration of that mark in 1968, and action thereon has been suspended because the plaintiff filed an opposition to the application. (3) When the defendant adopted "Smog" as its trademark, the defendant and its advertising agency were aware of the plaintiff's trademark and of its position as a major producer of raincoats. (4) The defendant has not advertised its coats to the public under the trademark "Smog." After its advertising of that mark appeared in a trade publication, the plaintiff protested its use and the defendant adopted the alternative trademark "Smug" under which its raincoats have been advertised to the public. The defendant has continued, however, to sell some coats under the trademark "Smog," and its use of the other trademark is not to be regarded as an admission of infringement or of abandonment of the trademark "Smog."

The evidence at the trial of the permanent injunction disclosed that, while the plaintiff has twenty-nine registrations and applications in the Patent Office, of which three are for "London Fog," the terms "The Fog" or "Fog" have never been the subject of an application for registration. The plaintiff has advertised goods bearing the trademark "London Fog" extensively over the years in various media.

The "London Fog" line is a higher-priced line than defendant's. The plaintiff also has a lesser-priced line of raincoats which it sells under the mark "Clipper Mist" (tr. 61). For a time the plaintiff engaged in an advertising campaign on behalf of its raincoats bearing the registered trademark "London Fog" by using the words "The Fog" in connection with the campaign. The words "The Fog" were used in several ways.

In the fall of 1966, an advertising campaign was launched by the distribution of a brochure to the trade which used as its theme the phrase "The Fearless Fogs." (tr. 27). In February 1967, the plaintiff distributed a film to retailers which included the phrase "I love the Fog," referring to the raincoat which bore the trademark "London Fog" (tr. 27–28; Ex. 2). In the summer of 1967, it distributed approximately 5,000 pins bearing the words "The Fog" to retailers to give to customers. (tr. 28–29). There is no evidence that the buttons were distributed to customers, but we may infer that some must have been in the ordinary course of business. From August to December, 1967, the plaintiff mounted an extensive advertising campaign to introduce its "The Fog" campaign which consisted of the adventures of a Superman or Batman character clothed in a London Fog raincoat, who was himself named "The Fog." (tr. 29–30; Exs. 6A & 6B).

Isolated instances of other advertisements by retail stores before 1966, showing a slogan "join our Fog-of-the-Month Club" and another showing "when it pours—it reigns—Come Spring every Fog has its day" were introduced into evidence. (Exs. 7 & 8). In conjunction with the carefree punning allowed department store copywriters, there was also a reference to "London Fog."

The defendant, in the Spring of 1968, advertised to the trade in Women's Wear Daily (Ex. 14D) that it would advertise its "Smog" raincoats in Seventeen, Mademoiselle and the New York Times Magazine, media which are also used by the plaintiff. With a kind of oxymoron effect, the defendant's copywriters typed out the heading: "A final and conclusive reason why you should be fighting rain with Smog." The advertisement was signed "A Division of the Cable Raincoat Company" with addresses and telephone numbers.

The plaintiff immediately protested the use of "Smog" by the defendant. As a result, the defendant did not go through with its advertising campaign and notified its customers by double page advertisements that it would use "Smug" instead in the promised campaign. The advertisement expressed the

defendant's position in the following manner: "How important is a name? Not very. Or so we thought. But someone doesn't agree with us. They say our name sounds something like theirs. And they're fogging [1] up the issue by taking us to court about it. We're not afraid though. We're going to fight them. In Court. But because we don't want our raincoats to get lost in the legal shuffle, from now on we're calling ourselves Smug." (Ex. 14F). The interference proceeding in the Patent Office is in suspense pending the decision in the case at bar.

Smog is a fog made heavier and darker by the smoke of a city. (Webster's New International Dictionary, 2d ed.). In Roget's Thesaurus "smog" is classified with "fog." "Smog" and "fog" are also similar in sound, and they rhyme. The word "smog," itself is an American neologism from two words, "smoke" and "fog." On the other hand, the registered trademark is not "Fog" but "London Fog" made by The Londontown Manufacturing Company. There is no doubt that if the defendant had chosen as its mark "London Smog" that would have been intolerably confusing. See Hancock v. American Steel & Wire Co., 203 F.2d 737, 40 CCPA 931 (1953).

But the defendant, on the one hand, did not include "London" in its trademark, and the plaintiff, on the other hand, did not register "The Fog." So far as the *registered* trademark is concerned, what we have in juxtaposition is "Smog" against "London Fog."

The plaintiff contends, however, that its trademark protection should be broader than "London Fog" because it has used "The Fog" and "Fog" as descriptive of the trademarked article itself, as a nickname accepted by consumers, and also because it has used "The Fog" and "Fog" as marks which on their own have attained a secondary meaning.

A "trademark" is any word used by a manufacturer to identify his goods and distinguish them from those manufactured or sold by others. 15 U.S.C. § 1127. But the plaintiff argues that although "The Fog" was never affixed to goods, a mark may be deemed used in commerce on goods when it is placed on "displays associated therewith." *Id.* The use of a phrase in advertisements is not sufficient, however, to make out a trademark use. Electronic Communications, Inc. v. Electronic Components for Industry Co., 443 F.2d 487, 492 (8 Cir. 1971); Victor Tool & Machine Corp. v. Sun Control Awnings, Inc., 299 F.Supp. 868, 874–875 (E.D.Mich.1968), affd., 411 F.2d 792 (6 Cir. 1969); Consumers Petroleum Co. v. Consumers Co. of Illinois, 169 F.2d 153, 161 (7 Cir. 1948). See generally 3 Callmann, Unfair Competition Trademarks and Monopolies, § 76.-2(e) (3d ed. 1969). While a mark may be deemed used on *services* when it is used in advertising such services, there is no similar reference to advertising when the section refers to trademarks on goods. 15 U.S.C. § 1052. Nor is the use of "The Fog" as a Homeric epithet to describe the Superman character in the advertisements a trademark use.

The plaintiff claims its entitlement to protection of the mark "The Fog," because it is a nickname used by the consuming public. That may be so, but there has been inadequate proof for an explicit finding, which is not surprising in the circumstances. The defendant's advertising man conceded that the *trade* calls the plaintiff's raincoat "The Fog" (Ex. B, tr. 74), and that some retailers may call the plaintiff's line "the Fog line" (Swain, tr. 10, 11; Getz, tr. 66). Retailers are not consumers. They know whom they buy from and the source of the goods. There is no such direct evidence in this case as there was in the case that held "Koke" an infringement of Coca-Cola's nickname. Coca-Cola Co. v. Koke Co., 235 F. 408,

---

1. The pun itself indicates that the writer may have considered "fog" an essential element of the controversy.

414 (D.Ariz.1916), aff'd, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920). Compare similarly Guinness v. Bernuth, 14 F.Supp. 210 (S.D.N.Y.1923) ("Dublin Stout").

In the trademark field, the precedents are so numerous and varied that resort to categories is often difficult and unrewarding. That an infringer is the Devil quoting Scripture sometimes cannot be determined until it is found that he is an infringer. In this field of law more than almost any other, the reaction of the trial judge as a person often concludes the issue. And sometimes an analogue can be found for a decision either way, leaving the Court with the rather comfortable feeling that it is, after all, supported by precedent.

In spite of the skill with which counsel for the defendant has demolished "The Fog" and "Fog" as separate trademarks, the question still remains why the defendant should go to such lengths to vindicate its right to "Smog" if it is simply another word like "Smug" and is not an attempt to trade on the plaintiff's good will.

There is surely no compelling reason for using "Smog" as an arbitrary mark. It is not descriptive nor would it connote source. The use of an element of the weather as a mark is fanciful. A raincoat is itself not a "fog," nor does it ever come "on little cat feet." Yet a fog may conjure up memories of a raincoat. The relation between raincoat and weather is an association of ideas in the mind of the consumer.

A manufacturer cannot preempt all weather as his exclusive mark, but by using an element in a fanciful sense he can appropriate an approximate synonym in popular use. If consumers come to think of a wire fence as a reminder of a *cyclone*, then a competitor may not remind them of his wire fence as a *tornado*. Hancock v. American Steel & Wire Co., *supra*. The reason is that advertising and trademarks rely on impressions. The consumer does not memorize the mark. He has a feel-

ing about it from past exposure. That feeling may be vague, subliminal it is said, but it comes to consciousness when the article is seen with the trademark affixed. The ultimate test is, of course, whether the public is likely to be confused by the similarity of the marks as to the source of the goods. Paula Payne Products Co. v. Johnson Publishing Co., Inc., 473 F.2d 901, 902 (C.C.P.A.1973); Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 542 (2 Cir. 1956); Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 199 F.2d 602, 603 (2 Cir. 1952).

This depends upon the judgment of whether ordinary consumers are likely in fact to be confused. The judgment can rarely be certain, but a court must try for verisimilitude.

One of the tests for confusing similarity is the intent of the second comer, though intent alone would not make an infringement of a far-fetched use. Is the second comer coming so close to the mark as to risk confusion? If so, why? And if there is such risk upon whom does the burden fall?

The evidence disclosed that in 1968 the defendant hired a new merchandising manager to develop a line of raincoats not then being marketed by the defendant. It was to be a line above the budget line which the defendant had been selling, and would cater to upstairs departments in department stores, rather than to the basements where the defendant's goods had been selling. It was to be sold at a price less than the highest-priced line (which is what the plaintiff was selling as "London Fog"). The merchandising manager hired an advertising agency for the new promotion, which was, in part, in the hands of Elias Getz, who was called as a witness by the plaintiff.

Getz freely conceded that he had known of London Fog raincoats since 1959 and that he knew the trade referred to them as "Fog." (tr. 65–66). He knew that the defendant's product was to be competitive with the plaintiff's, except as to price, and that it was

to be sold in the same departments of the department stores. He was looking for a brand name that would have the quality of "memorability" (tr. 71). The name "Fog" he conceded had memorability because the plaintiff, Londontown, "[is] probably one of the four or five largest advertisers in the soft goods trade, and I would say it has memorability because of the amount of money that they have spent to give it that memorability." (tr. 71). It was his opinion that "words like rain, snow, fog, because they are part of the everyday vocabulary . . . may or may not generally have memorability unless you invest behind them" (tr. 71).[2]

Getz knew that "the coats were essentially the same visually—they looked the same, and that ours would be at a lower price" (tr. 82–83). He also knew that the label would not show Cable as the manufacturer, nor would the hang tag attached to the coat (Ex. 20C).

There is, thus, no excuse tendered for the use of "Smog" except its purported quality of memorability. Why "Smog" should be more memorable than, let us say, "Tempest" or "Hurricane" or "Cloud" is not clear. If some element of weather was sought as a fanciful mark, there were probably others unappropriated that sounded less like "Fog." Getz recognized that memorability would be attained, in any event, only by extensive advertising of the brand.

The plaintiff had, concededly, spent over 4.8 million dollars in advertising in the five years prior to the defendant's adoption of the mark here in issue during which time it had sold over 120 million dollars worth of coats bearing the "London Fog" mark (Ex. 1; Stip. tr. 2).

Since members of the public do not buy a raincoat every week or even every season, there is no way of proving that "Fog" is at least as predominant in memory as "London." The shorthand use of "The Fog" by the trade is some indication, however, that it is a convenient abbreviation and may well strike the consumer as predominant. Although "Fog" alone is not the mark, I think in the context, as we have seen, of a similar-looking coat with a "Smog" label and no manufacturer's name, there is risk of confusion that the coat is made by the same manufacturer.

As the Court of Appeals has said, it is hard to see why a second comer would come so close unless he wanted to "obtain some advantage from the trade which [the plaintiff] had built up." Miles Shoes, Inc. v. R. H. Macy Co., Inc., *supra*, 199 F.2d at 603. Here, the dress of the product is substantially the same, the brand name of the same *genus*, and the name of the manufacturing defendant obscured in anonymity.

In such circumstances I must lean in favor of the plaintiff. As Judge Learned Hand wrote long ago:

"Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field. He has the right to insist that others in making up their arbitrary names should so certainly keep away from his customers as to raise no question." Lambert Pharmacal Co. v. Bolton Chemical Corporation, 219 F. 325, 326 (S.D.N.Y.1915).

[7] The rule is quite clear in this circuit (although its application is sometimes difficult) "that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." Ritchie v. Chesebrough-Pond's, Inc., 281 F.2d 755, 758 (2 Cir. 1960); A. T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689 (2 Cir. 1972).

If the defendant is selling its goods because of their value, it is in fair com-

2. After the luncheon recess, Mr. Getz testified that he had meant that Londontown had created memorability for "London Fog," but not for "Fog." (tr. 73).

petition. If it wishes, in addition, to build up a mark connoting that it is the source of the goods, it should do so by a mark more clearly exclusive to itself. "Smug" seems to achieve that end.[3]

On the basis of competing equitable considerations, I conclude that the plaintiff will lose more if I grant the defendant its change of vowel, than the defendant will lose if I deny it, assuming that its motives are as pure as has been affirmed. All the defendant loses on that assumption is the use of a mark that could, at best, be only slightly better as a mnemonic device for raincoats. There should be no adverse effect on its fair competition with the plaintiff.

The defendant will be enjoined from using "Smog" as a trademark for raincoats, but it may continue to use "Smug."

The foregoing shall constitute the findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

---

3. "The second comer must create a reputation of its own and not trade on the goodwill of another product already established at considerable cost and risk." Ritchie v. Chesebrough-Pond's, Inc., *supra*, 281 F.2d at 758 (Swan, J.)