**In re SCHMID LABORATORIES**

v.

**YOUNGS DRUG PRODUCTS CORP.**

Civ. A. No. 77–0560.

United States District Court,
D. New Jersey.

June 20, 1979.

Gordon D. Coplein, Darby & Darby, P. C., New York City, Howard N. Sommers, Sommers & Sommers, Hackensack, N. J., for plaintiff.

Howard C. Miskin, Miskin & Sutton, New York City, Simon Kimmelman, Smith, Stratton, Wise & Heher, Trenton, N. J., for defendant.

OPINION

CLARKSON S. FISHER, Chief Judge.

## I. BACKGROUND

This is a trademark infringement case involving the competing rights of two major distributors of condoms to use the term "RIBBED" on their respective packages of prophylactics. Plaintiff, Schmid Laboratories Inc. ("Schmid"), and defendant Youngs Drug Products Corporation ("Youngs"), are both New Jersey corporations engaged in the nationwide distribution and sale of condoms. Plaintiff has a registered trademark in the term "SENSI–RIBBED".[1] It uses this trademark on its "ribbed"[2] type con-

---

1. Reg.No. 1,046,296; registered August 17, 1976.

2. The parties have described a "ribbed" condom as one having a series of concentric ridges along its outer surface.

dom, along with its brand name, "EXCI-TA", which it places on all of its packages as well. Defendant uses an unregistered mark, "RIBBED", on its "ribbed" style condom, and also places its brand name, "TROJAN", on the package.

Plaintiff essentially alleges that defendant's mark, "RIBBED", infringes upon plaintiff's registered mark, "SENSI-RIBBED", and that it also constitutes unfair competition. Defendant generally denies any infringement or unfair competition, and by counterclaim, *inter alia*, seeks to have plaintiff's registered trademark cancelled. This matter is presently before the Court on defendant's motion for summary judgment on Counts I and II of the complaint, the trademark infringement and unfair competition claims. The other causes of action raised in the complaint and the counterclaims are not in issue at this time.

## II. DISCUSSION

The inquiry here is whether or not defendant's use of the term "RIBBED" on its packages infringes upon plaintiff's registered mark, "SENSI-RIBBED", or in any other manner constitutes unfair competition.

### A. *Trademark Infringement*

■ It could be generally agreed that no two trademark cases are quite alike. This lawsuit is no exception. However, it is clear that the test of trademark infringement in this case, as in any other, is whether or not the defendant's use of the mark in question is likely to cause confusion as to the source or origin of the condoms. *See* 15 U.S.C. § 1114(1)(a); *Kampgrounds of America Inc. v. North Delaware A-OK Campground Inc.*, 415 F.Supp. 1288, 1294 (D.Del.1976), *aff'd mem.*, 556 F.2d 566 (3d Cir. 1977); *Alfred Dunhill of London Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341, 1360 (E.D.Pa.1972), *aff'd mem.*, 480 F.2d 917 (3d Cir. 1973). This

"likelihood of confusion" is determined by viewing the two marks in question as they would appear to the ordinary purchaser of the product involved. *See Dresser Industries Inc. v. Heraeus Engelhard Vacuum Inc.*, 395 F.2d 457, 462 (3d Cir.), *cert. denied*, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968); *Kampgrounds of America Inc.*, *supra*, 415 F.Supp. at 1294. The factors to be considered in determining likelihood of confusion are:

1) degree of resemblance between the marks in appearance, pronunciation, translation, and suggestiveness.

2) intent of the second user in adopting the allegedly infringing mark.

3) similarity of circumstances and conditions surrounding the purchase of the goods involved.

4) degree of care likely to be exercised by purchasers.

*See Motor Master Products Corp. v. Motor Masters*, 446 F.Supp. 165, 168 (E.D.Pa.1978); *Alfred Dunhill of London Inc.*, *supra*, 350 F.Supp. at 1363; *Restatement of Torts* 2d § 729. No single factor may be taken as controlling, and all pertinent considerations must be weighed. *See Motor Master Products Corp.*, *supra*, 446 F.Supp. at 168. Since this matter is presently before me on defendant's motion for summary judgment, the burden is on defendant to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). All factual inferences must be resolved in favor of plaintiff, the non-moving party. *See Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978).[3]

1) Degree of resemblance between the two marks.

#### a) Appearance

■ In terms of appearance, defendant's mark, "RIBBED", differs significantly from

---

3. Since likelihood of confusion is ascertained by looking to the average purchaser's perception of the marks in question, consumer surveys could have provided helpful data. However, the absence of any such survey is certainly not grounds for denying the motion. *See, e. g., Westward Coach Manufacturing Co. v. Ford Motor Co.*, 258 F.Supp. 67 (S.D.Ind.1966), *aff'd*, 388 F.2d 627 (7th Cir.), *cert. denied*, 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968).

plaintiff's registered trademark, "SENSI–RIBBED". Defendant's packaging is brown and tan in color, and depicts the distant figures of a man and woman walking hand-in-hand along a beach during sunset. *See* Exhibit N, attached to affidavit of Gordon D. Coplein, filed May 4, 1979. Plaintiff's package is essentially pink or light red, and is a close-up depiction of the faces of a man and woman embracing. *See* Exhibit 4, attached to affidavit of Lewis Brenner, filed April 3, 1979. Also, defendant's mark is imprinted in gold lettering, slightly raised, and accentuated with pencil-thin lines, whereas plaintiff's mark is in solid black, block-type lettering.

Dissimilarity in appearance is also illustrated by the presence of both parties' respective brand names, "EXCITA" and "TROJAN" on their packages. These names are prominently displayed on the packages, and serve as a highly visible indication of the correct source of origin of the product contained within. I think that the average purchaser, having made a visual inspection of the different packages, is not likely to be confused as to whether the prophylactics are a Schmid product or a Youngs product. *See, e.g., B & L Sales Associates v. H. Daroff and Sons Inc.*, 421 F.2d 352, 354 (2d Cir. 1970).

### b) Pronunciation

As to this form of resemblance, the question is whether the pronunciation of "RIBBED" generates an auditory response that calls to mind or may be confused with the sound "SENSI–RIBBED". *See Chips 'N Twigs Inc. v. Chip-Chip Ltd.*, 414 F.Supp. 1003, 1015 (E.D.Pa.1976). When recited, "RIBBED" does not sound very much like "SENSI–RIBBED". Both contain the one-syllable word "RIBBED", but are readily distinguished by the two-syllable prefix, "SENSI" in plaintiff's mark. In instances where the sole difference in pronunciation is a single consonantal diphthong, *see Londontown Manufacturing Co. v. Cable Raincoat Co.*, 371 F.Supp. 1114,

1119 (S.D.N.Y.1974) (use of trademarks "smog" and "fog" by competing marketers of men's raincoats), the likelihood of confusion is much more apparent. Here, the distinguishing sound is a two-syllable prefix which sufficiently sets the two marks apart.[4]

### c) Suggestiveness

"Suggestiveness", in the trademark sense, denotes the collective impression created in the mind of the prospective purchaser by the sight and sound of the mark. It concerns the nature and strength of the customer's response to the mark, *i. e.,* whether the mark imparts upon the customer a positive or negative impression of that company's product, and whether this impression is fleeting or enduring. In shaping consumers' perceptions of certain products, merchants have come to rely increasingly on various advertising techniques. As has been noted, "advertising and trademarks rely on impressions. The consumer does not memorize the mark. He has a feeling about it from past exposure." *Londontown Manufacturing Co., supra,* 371 F.Supp. at 1118. Thus, the focus of the parties' respective advertising of their condom product lines is a relevant consideration here. Specifically, I think it is important to determine whether or not the parties emphasize their marks, "SENSI–RIBBED" and "RIBBED", as part of the promotion of their ribbed condoms. Having reviewed the numerous exhibits which depict the advertisements used by plaintiff and defendant in trade journals and magazines, it appears that neither of them emphasizes their trademarks. For instance, plaintiff points to its brand name, "EXCITA", rather than its trademark, "SENSI–RIBBED", in its promotional efforts. *See, e. g.,* Exhibits G, I, J, attached to Coplein Affidavit, *supra* ; Exhibit 13 B, attached to Brenner Affidavit, *supra.* Similarly, defendant attempts to focus consumer awareness on its brand name, "TROJAN", rather than on the mark

4. The next factor, "degree of resemblance in . . . translation" does not appear to be particularly relevant here.

"RIBBED". *See, e. g.,* Exhibit 14 A–C, attached to Brenner Affidavit, *supra.* Both parties' brand names are in large print and are centrally placed on the advertisements, thus drawing consumer attention to them. Prospective purchasers attempting to ascertain source of origin of the condoms are most likely to recall the clearly dissimilar brand names, "EXCITA" and "TROJAN", rather than the allegedly similar trademarks, "SENSI–RIBBED" and "RIBBED".

2) Intent of the second user in adopting the allegedly infringing mark.

 While plaintiff was the first company to register a trademark for a "ribbed" condom, it appears that a third company, Akwell Industries Inc., was actually the first to market this particular type of condom. *See* Affidavit of Howard C. Miskin, filed April 3, 1979, at ¶ 6. In or about 1976, plaintiff began to sell its own ribbed condom, and defendant followed approximately one year later. *See* Brenner Affidavit, *supra,* at ¶¶ 4, 10. Certainly, the sequence in which plaintiff and defendant entered the market is relevant in determining if defendant is attempting to "bask in the reflected popularity" of plaintiff's name. *See Q–Tips Inc. v. Johnson & Johnson,* 206 F.2d 144, 147 (3d Cir.), *cert. denied,* 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953). However, there is no evidence that defendant attempted to garner any good will previously generated by plaintiff's mark, "SENSI–RIBBED". Defendant acknowledges that when it began to sell ribbed condoms it was aware of plaintiff's product, "EXCITA", and had discussed it with defendant's sales force. *See* Transcript of Deposition of Lewis R. Brenner, October 27, 1977, at 53, 135. However, a wrongful intent cannot be presumed of every subsequent entrant into a particular product field.[5] Here, several facts indicate that defendant's intentions in its choice of mark are innocent. First, as noted previously, on all of defendant's packages its brand name, "TROJAN", is placed directly above the mark, "RIBBED". This discounts the notion that in using the mark defendant was attempting to attribute the source of the condoms to someone other than itself. *See, e. g., B & L Sales Associates, supra,* 421 F.2d at 353. Second, as discussed earlier, the clear dissimilarity in trade dress used by defendant in its packaging, as compared to that of plaintiff, indicates that defendant did not intend to confuse customers as to the source of the goods. Third, it appears that at least three other distributors of ribbed condoms use the term "ribbed" in one form or another on their packages. *See* Brenner Affidavit, *supra,* at ¶ 11. The widespread use of the term "ribbed" within the business diminishes the likelihood that defendant adopted it so as to take advantage of any goodwill already created by plaintiff.

3) Similarity in circumstances and conditions surrounding the purchase of the goods involved.

 The parties' respective products are marketed under virtually identical circumstances. Both brands are distributed on a nationwide basis. Customer awareness of them is achieved via the same media channel, "men's" magazines, such as *Playboy, Penthouse,* and *Oui.* The goods serve identical functions. They are retailed through the same source, local pharmacies, and they can be found side-by-side on store shelves. Simply put, from the average customer's viewpoint, prior to purchase, there is little to distinguish defendant's condom from plaintiff's. However, this close similarity in the circumstances surrounding the purchase of the goods does not, without more, show a likelihood of confusion. A countless number of products, though sold by numerous companies, under many different labels, are often identical in every respect—except as to source. This similitude in circumstances surrounding the purchase and sale of condoms may diminish the aggregate degree of resemblance needed to prove likelihood of

---

5. This is necessarily so even if the earlier entrant has spent considerable sums of money in advertising and promoting the mark.

confusion; but it is not confusion's substitute. I recognize that a prospective customer has little basis upon which to distinguish between plaintiff's and defendant's respective brands of condoms. However, I am not persuaded that when the customer's choice is made, that it is likely that he [6] will have been confused to the extent that he purchased defendant's condom when he actually wanted to buy plaintiff's.

4) Degree of care likely to be exercised by purchasers.

Given the relative inexpensiveness of the goods involved, and the apparent near-uniform quality of the various brands marketed, it is not likely that the average purchaser exercises great care in buying condoms. *See, e. g., Scott Paper Co. v. Scott's Liquid Gold Inc.*, 439 F.Supp. 1022, 1040 (D.Del. 1977). Such a nondiscerning customer is most likely to base his purchase upon his overall impression of the various brands of condoms gained by a visual examination of the goods. *See John Wright Inc. v. Casper Corp.*, 419 F.Supp. 292, 321 (E.D.Pa.1976). I have already determined that, in appearance, the two packages in question are significantly different from each other. Thus, the fact that the typical purchaser of condoms exercises minimal care in making his choice does not necessarily show that a likelihood of confusion as to origin exists. This fact does not counterbalance the dissimilarity in overall appearance of the two packages.

Having reviewed the relevant factors, I conclude that no likelihood of confusion exists between the marks in question, and that defendant is entitled to summary judgment as to Count I of the complaint.

B. *The "fair use" doctrine*

■ Alternatively, I believe that summary judgment on this Count is proper because defendant's depiction of "RIBBED" on its packages constitutes a "fair use" of that term. The "fair use" doctrine creates a statutory defense to a claim of infringement, even as to an uncontestable mark, when the term charged to be an infringement is

a use, otherwise than as a trade or service mark . . . and [is] used fairly and in good faith only to describe to users the goods or services of such party . . ."

15 U.S.C. § 1115(b)(4); *see Abercrombie and Fitch Co. v. Hunting World Inc.*, 537 F.2d 4, 12 (2d Cir. 1976). In this case, I think it is clear that defendant does not use "RIBBED" as a trademark. By definition, a trademark is "a distinctive mark, symbol, or emblem used by a producer or manufacturer *to identify and distinguish his goods from those of others*". *Educational Development Corp. v. Economy Co.*, 562 F.2d 26, 28 (10th Cir. 1977) (emphasis added). A general examination of defendant's package reveals that "RIBBED" is not used to "identify and distinguish" defendant's condoms from those marketed by other companies. Visual attention is not focused on the mark, but on the brand name, "TROJAN". "TROJAN" is printed in solid white lettering which noticeably contrasts with the varying shades of gold and brown in the background. On the other hand, "RIBBED" is in pencil-lined gold lettering which blends in with the other color tones on the package.

■ Additionally, whatever attention is drawn to "RIBBED" serves only to inform the prospective purchaser *what type* of condom is contained within, not whose product it is. "RIBBED" indicates one of this prophylactic's essential and distinguishing characteristics, that is, that it has a series of concentric ridges along its outer surface. It denotes the difference between this particular type of condom and the several others marketed by defendant under the "TROJAN" label. The fact that "RIBBED" is used by defendant "as a symbol to attract public attention" does not mean it is being used as a trademark.[7] Virtually every aspect of a product's trade

---

6. Or "she", as the case may be, in light of surveys made regarding the sex of condom purchasers. *See, e. g.,* Exhibit 8 E, attached to Brenner Affidavit, *supra.*

7. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion, at 12.

dress is intended to catch the eye of the purchaser. Unless attention is drawn to the particular word or term *as being indicative of source of origin* of that product, the term is not being used as a trademark.

 Plaintiff contends that defendant uses "RIBBED" as a trademark because it is printed in capital letters and is the most prominent feature of defendant's packaging. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion, at 12. However, mere capitalization of "RIBBED" does not constitute trademark usage. *See Scanwell Laboratories Inc. v. Department of Transportation*, 484 F.2d 1385, 1389 (C.C. P.A.1973). This is true even when, as here, the lettering is larger than that used for *other* capitalized words on the package. Otherwise, as defendant points out, the capitalization of even a clearly neutral term, such as "NEW", on a product's packaging would be a trademark usage of that word.[8] It appears that on all of the different styles of condoms marketed by defendant the name of the particular type of condom is printed in capital letters, *e.g.*, "GUARDIAN", "TROJAN–ENZ", "NATURAL LAMB".[9] *See* Exhibit O, attached to Coplein Affidavit, *supra.* Thus, I don't believe that capitalization of "RIBBED" has any source significance.[10]

The other element of the "fair use" defense is that the term in question must be "used fairly and in good faith only to describe to users the goods . . . of such party." 15 U.S.C. § 1115(b)(4). Defendant's use meets this standard in that it used "RIBBED" in its ordinary sense; all distributors of ribbed condoms place the word "ribbed" on their packages in one form or another, and quite logically so. *See* Bren-

ner Affidavit, *supra*, at ¶ 16. No wrongful intent can be inferred from defendant's adoption of this term since it has not used "RIBBED" as a means of fostering an identification of that word with defendant's company as the source of origin of the goods. *Cf. Louis Rich Inc. v. Horace W. Longacre Inc.*, 423 F.Supp. 1327, 1340 (E.D. Pa.1976).

Accordingly, defendant is entitled to summary judgment on Count I on the alternative ground that its depiction of the term "RIBBED" is a "fair use". *See B & L Sales Associates, supra*, 421 F.2d at 354.[11]

### C. *Unfair Competition*

Count II of the complaint alleges that defendant's use of the mark "RIBBED" constitutes unfair competition. Jurisdiction is invoked pursuant to 28 U.S.C. § 1338(b) in that this is a common law claim for unfair competition related to a claim for trademark infringement.

 Unfair competition is the *passing off* by a defendant of his goods or services as those of plaintiff by virtue of substantial similarity between the two, *leading to confusion* on the part of potential customers. *See Boston Professional Hockey Ass'n Inc. v. Dallas Cap and Emblem Mfg. Inc.*, 510 F.2d 1004, 1010 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98, *reh. denied*, 423 U.S. 991, 96 S.Ct. 408, 46 L.Ed.2d 312 (1975) (emphasis added). It is a more broadly conceived cause of action than trademark infringement, and there are some instances where defendant may be liable for competing unfairly without having technically infringed. *See Professional Golfers Ass'n of America v. Bankers Life and Casualty Co.*, 514 F.2d

---

**8.** *See* Defendant's Reply Brief, at 2.

**9.** The one exception is defendant's "Plus" condom. While only the "P" in "Plus" is capitalized, all the letters are in print larger than that used in other words on the package.

**10.** One of these capitalized marks, "ENZ", is also registered as a trademark. However, this does not mean that defendant is using the capitalized term "RIBBED" as a trademark as well. There has been no showing that defendant has attempted to register "RIBBED" as a trade-

mark. *Cf. Feathercombs Inc. v. Solo Products Corp.*, 306 F.2d 251, 256 (2d Cir. 1962).

**11.** Since I have determined that defendant has not infringed plaintiff's trademark and has made a "fair use" of the term "RIBBED", I need not decide whether or not "RIBBED" is a generic term. This question is more relevant to the issue of cancellation of plaintiff's trademark, which is a matter not presently before the Court.

665, 671 (5th Cir. 1975). However, this case does not present such an instance. I have already determined that defendant's use of "RIBBED" does not create any likelihood of confusion among potential customers. Absent such a showing, there is no basis for liability for unfair competition. *See DeCosta v. Columbia Broadcasting System Inc.*, 520 F.2d 499, 515 (1st Cir.), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1975). Moreover, by including its brand name, "TROJAN", on its packages, defendant has taken reasonable precautions to correctly identify the source of its product. This negates any inference that defendant is attempting to "pass off" its condoms as being those of plaintiff's.

Thus, defendant's motion for summary judgment on Count II is also granted. Counsel for defendant will submit an appropriate order.