**LEBOW BROS., INC.**

v.

**LEBOLE EUROCONF S.p.A. and Bill Flink Associates, Inc.**

Civ. A. No. 80–781.

United States District Court, E. D. Pennsylvania.

· Dec. 12, 1980.

Nelson E. Kimmelman, Edelson, Udell, Kimmelman & Farrell, Philadelphia, Pa., for plaintiff.

Henry L. Shenier, Shenier & O'Connor, New York City, Joseph H. Reiter, Stassen, Kostos & Mason, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is an action for trademark infringement and unfair competition brought pur-

suant to 15 U.S.C. § 1114(1)[1] as well as unspecified state statutes and common law designed to protect trademark owners against unfair competition.

Plaintiff seeks to permanently enjoin defendants from using defendants' registered trademark "Lebole" in connection with the manufacture and sale of clothing, and for treble damages for losses sustained by plaintiff from the loss of goodwill and other consequences of defendants' acts.

By Memorandum Opinion and Order dated August 25, 1980, this court denied plaintiff's motion for a preliminary injunction and denied defendants' motion for summary judgment. Trial was subsequently held before this court, sitting without a jury. For the reasons set forth below, we find in favor of the defendants and against the plaintiff.

Plaintiff Lebow Bros., Inc. is a manufacturer and distributor of men's and boys' suits, slacks, coats, and other clothing under the registered trademark label "Lebow Clothes." Lebow Bros., Inc. also manufactures women's clothing under the registered trademark label "The Lebow Collection." There is no dispute that plaintiff is owner of a U. S. Trademark Registration for "Lebow Clothes" dated December 11, 1962, with a stated first use date of 1936, and a U. S. Trademark Registration for "The Lebow Collection" dated November 15, 1977, with a stated first use date of September 30, 1976.

Defendant Lebole Euroconf S.p.A. is an Italian Company and owner of the U. S. Trademark Registration "Lebole" for textiles, clothing and other goods applied for on July 28, 1975, claiming priority on the basis of an Italian trademark application filed on March 26, 1975, and registered on July 4, 1978. Defendant Bill Flink Associates, Inc. is the United States sales representative for defendant Lebole Euroconf S.p.A. Defendants began selling clothing in the United States under the label "Lebole" in November of 1978.

The core of plaintiff's complaint is that defendants' alleged infringement upon its registered "Lebow Clothes" trademark is likely to cause confusion, mistake, or deception so that potential purchasers of Lebow Bros. Inc. suits will erroneously believe that Lebole Euroconf S.p.A. suits were made by Lebow Bros., Inc. Plaintiffs also alleges in its complaint that defendants' use of its trademark "Lebole" constitutes an act of unfair competition which dilutes the distinctive quality of plaintiff's name and causes a loss in value of the Lebow Bros., Inc. trademarks.

■■■ The standard to be applied by the court in an action for trademark infringement and unfair competition is the likelihood of confusion as regards the origin or source of the plaintiff's products that would occur through the continued use by the defendant of the defendants' trademark. *Schmid Laboratories v. Youngs Drug Products*, 482 F.Supp. 14, 17 (D.N.J.1979); *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341, 1380 (E.D.Pa.1972), aff'd mem., 480 F.2d 917 (3d Cir. 1973). This likelihood of confusion is determined by viewing the two marks in question as they would appear to the ordinary purchaser of the product in-

1. 15 U.S.C. § 1114(1) provides:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

volved. *Id., see, Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc.,* 395 F.2d 457, 462 (3d Cir.), *cert. denied,* 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968). The factors to be considered in determining likelihood of confusion are:

    (a) the degree of resemblance between the designation and the other's trade name, trademark or certification mark in

        (i) appearance;

        (ii) pronunciation of the words involved;

        (iii) translation of the words involved;

        (iv) verbal translations of the pictures or designs involved;

        (v) suggestiveness, connotation or meaning of the actor's designation and the trade name, trademark or certification mark involved;

    (b) the intent of the actor in adopting and using the designation;

    (c) the similarity of circumstances and conditions surrounding the purchase of the goods or services involved;

    (d) the degree of care likely to be exercised by purchasers of the goods or services involved.

*Schmid Laboratories v. Youngs Drug,* 482 F.Supp. at 17; *Motor Master Products Corp. v. Motor Masters Warehouse, Inc.,* 446 F.Supp. 165, 168 (E.D.Pa.1978); *Restatement of Torts 2d,* § 729. No single factor may be taken as controlling, and all pertinent factors must be considered to determine the likelihood of confusion, mistake or deception. *Motor Master Products Corp. v. Motor Masters Warehouse, Inc.,* 446 F.Supp. at 168.

■ There is no similarity in appearance between plaintiff's and defendants' marks sufficient to give rise to likelihood of confusion. Plaintiff's labels use the marks "Lebow Clothes" and "The Lebow Collection". "Lebow Clothes", the mark used in connection with the men's clothing manufactured by plaintiff, has appeared both in script lettering and in block lettering. Victor Lebow, plaintiff's Executive Vice President, testified that plaintiff had used script lettering until 1976, and block lettering since that date. Other writing, such as a store

name, frequently appears on the labels in plaintiff's men's clothing. In certain instances, the word "Lebow" has appeared by itself, as in some advertising. "The Lebow Collection", used by plaintiff in connection with its women's clothing, is printed in block letters. Defendants' mark, "Lebole" is printed in block letters. The word "Lebole" appears by itself on defendants' label.

The differences in the spelling of and in the number of letters in the trademarks, the number of words appearing in the trademarks and on the labels, and the overall general appearance of the trademarks are sufficient, despite the common use of block printing, to dispel any threat of likelihood of confusion as regards the origin or source of plaintiff's suits.

We conclude also that there is no likelihood of confusion arising out of the alleged similarity in the pronunciation and sound of the two marks. Virtually all of the testimony offered by the parties concerned the pronunciation of the marks and the effect of different pronunciations upon the parties' customers. Both sides produced conflicting testimony as regards both the "correct" pronunciation and the usual or likely pronunciation of the surnames Lebow and Lebole.

There is little dispute as to the pronunciation of Lebow, which is spoken either as Lé bow, the pronunciation used by Lebow Bros., Inc. and by the Lebow family, or as Lebow. The disagreement between the parties, and the source of any confusion which might possibly arise, concerns the pronunciation of Lebole. Plaintiff's case essentially rests upon its contention that regardless of the pronunciation used by Lebole Euroconf, S.p.A. and by the Lebole family, namely Lěbolē, many, if not most, of the American buying public is likely to be confused by use of the "Lebole" mark because of the alleged predilection of Americans to pronounce "Lebole" as "Lebowl". The pronunciation of "Lebole" as "Lebowl" is contended by plaintiff to be so similar in sound to "Lebow" as to be a source of likely confusion. It is the defendants' contention that the "correct" pronunciation, i.e., that

favored by the Lebole family and by Lebole Euroconf S.p.A., is "L ̆ebol ̄e", not "Lebowl".

We note initially that we need not determine the "correct" pronunciation of "Lebole", nor need we be concerned with whether there ever is a "correct" pronunciation for a surname, an issue also disputed by the parties, for even if there is, there may still be a likelihood of confusion if the public employs a usual or likely pronunciation rather than the "correct" pronunciation.

Based upon the trial testimony of the two linguistics experts, we believe it likely that some customers or potential customers will pronounce "Lebole" as "Lebowl". Nevertheless, the testimony and other evidence produced at trial has failed to demonstrate that a likelihood of confusion as regards the *pronunciation* of "Lebole" will result in a likelihood of confusion as regards the two companies, Lebow Bros., Inc. and Lebole Euroconf S.p.A., or the garments they manufacture and to which they affix their respective trademarks. In other words, regardless of the particular pronunciation of "Lebole" which may be used, there is not likely to be such confusion on the part of the ordinary customer for a Lebow Bros., Inc. suit as would lead him to erroneously purchase a Lebole Euroconf S.p.A. suit although actually desiring to purchase a Lebow Bros. Inc. suit. *See, Schmid Laboratories v. Youngs Drug Products*, 482 F.Supp. at 19–20.

Plaintiff did produce a clothing salesman who stated that if a customer asked for a "Lebole" (pronounced as "Lebowl") suit, he, the salesman, would think that the customer wanted a "Lebow" suit. But it is obvious that such an occurrence would hardly be the equivalent of a situation in which a customer desiring a "Lebow" suit was instead sold a "Lebole" suit, either because the customer and the salesman were both confused as to the difference between the suits and their manufacturers, or because the salesman, knowing the suits to be from different manufacturers, deliberately took advantage of the customer's confusion as to the difference between them. Plaintiff

simply has not shown that continued use of "Lebole" by defendants will produce a likelihood of confusion as regards the origin or source of plaintiff's garments. Rather, plaintiff has merely shown that there may be a likelihood of confusion as regards the *pronunciation* of defendants' mark "Lebole", and nothing more.

The degree of resemblance in translation of words and verbal translations of pictures and designs is not particularly relevant in this case, and thus need not be addressed by us. As for "suggestiveness", there is nothing about the "Lebole" mark which might impart in the mind of a customer an impression that defendants' garments are anything but exactly what they purport to be, namely, products of Lebole Euroconf, S.p.A. The "Lebole" mark does not in any way suggest a confusing similarity with the "Lebow Clothes" or "The Lebow Collection" marks, or with Lebow Bros., Inc. or the garments they produce.

The evidence clearly shows the intent of the defendants in adopting the "Lebole" mark to be completely innocent. There was no intent whatsoever to confuse the public or to take advantage of the goodwill associated with plaintiff's mark. *See Schmid Laboratories v. Youngs Drug Products*, 482 F.Supp. at 19. "Lebole" is the surname of the founders of Lebole Euroconf, S.p.A., and was selected as that company's trademark for that reason. It is not an artificially invented name, nor a term chosen for its descriptiveness or suggestiveness of some quality or claim by which the product is sought to be identified. The defendants were in no way attempting to attribute the source of their clothing to Lebow Bros., Inc. or to anyone else. *See, Id.*

The circumstances and conditions surrounding the purchase of plaintiff's and defendants' men's suits are somewhat similar in that both manufacturers sell their suits in department stores and men's specialty stores. In addition, at least one store, Saks Fifth Avenue, sells them both, albeit in different departments. On the average, Lebole suits are somewhat less expensive than Lebow suits, ($275 to $350, compared

to $325 to $395), although there is a good deal of overlap in their respective price ranges. Defendants' suits are geared to a somewhat younger market than are plaintiff's suits, and are designed with a European fit, with a different cut in the shoulders, length, lapels, and trousers as compared to plaintiff's more traditional and updated traditional clothing. Taken as a whole, these differences in the markets for the suits and in the suits themselves are great enough to offset any likelihood of confusion which might arise from the similarity of the stores in which they are sold. Moreover, any such similarity cannot by itself establish likelihood of confusion, for as we said with regard to pronunciation, *supra*, it is not likely that the similarity of circumstances and conditions surrounding the purchase and sale of the suits of plaintiff and defendants will so confuse a buyer to the extent that he will purchase defendants' clothing when he actually wanted to buy plaintiff's clothing. *See, Schmid Laboratories v. Youngs Drug Products*, 482 F.Supp. at 19–20.

Finally, we consider the degree of care likely to be exercised by purchasers of plaintiff's and defendants' suits. The testimony of the two men's clothing salesmen differed as to the extent to which customers look at the labels on suits, but consideration of all of the testimony and evidence leads us to conclude that because of the high degree of care normally exercised by purchasers of Lebow Bros., Inc. suits no likelihood of confusion will result from continued use of the "Lebole" trademark. Testimony revealed that purchasers of "Lebow" clothes are "quality" buyers who are likely to be aware of that name and be familiar with and able to recognize the differences in style and quality of different brands of clothing. Such customers will not be so easily confused as plaintiff would have us believe.

We conclude by noting that although actual confusion need not be shown, *Motor Master Products Corp. v. Motor Masters Warehouse, Inc.*, 446 F.Supp. at 168, evidence of actual confusion has often been viewed as the best evidence of the likelihood of confusion, *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 578, n.3 (7th Cir. 1978). Significantly, there was no evidence offered at trial of any *actual* confusion regarding either the two trademarks, the two manufacturers, or the suits provided by those manufacturers and which carry those marks on their labels. Furthermore, Victor Lebow, plaintiff's Executive Vice President, testified that he was unable to specifically state any injury which Lebow Bros., Inc. had suffered due to the defendants' use of the trademark "Lebole."

In light of the dissimilarity in appearance and the innocence of defendants' adoption of the marks, the high degree of care exercised by purchasers of the expensive clothing involved here, and the unlikeliness of any confusion arising out of the pronunciation and suggestiveness of the marks, or the circumstances surrounding the purchase of plaintiff's and defendants' clothing, we conclude that as a result of the defendants' continued use of the trademark "Lebole", there is no likelihood of confusion on the part of the ordinary purchaser of plaintiff's clothing as regards its origin or source.

In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the above memorandum opinion constitutes this court's findings of fact and conclusions of law.