**The CITRUS GROUP, INC.**

v.

**CADBURY BEVERAGES, INC. and Canada Dry Potomac Corp.**

**WN–91–2117.**

United States District Court,
D. Maryland.

Sept. 26, 1991.

William R. Voltz, Thomas J. Ward, Washington, D.C., for plaintiff.

Paul M. Sandler, Lloyd J. Snow, Freishat & Sandler, Henry L. Mason, III, Debra J.

Stanek, Howard R. Fine, Sidley & Austin, Baltimore, Md., for defendants.

## MEMORANDUM

NICKERSON, District Judge.

Pending before this Court is Plaintiff Citrus Group's Motion for Preliminary Injunction (Paper No. 3) filed July 26, 1991. Defendants oppose the motion. (Paper No. 19) Upon a review of the pleadings, and after a hearing on September 10, 1991, this Court determines that Plaintiff's motion should be denied.

## BACKGROUND

Plaintiff Citrus Group ("Citrus") distributes fruit juice concentrates and fruit juice drinks under the duly registered trademark "MAIN SQUEEZE." (U.S. Patent and Trademark Office Reg. No. 1,572,274, registered 12–19–89). Defendants Cadbury Beverages, Inc. and its bottler, Canada Dry Potomac Corp., instituted an advertising campaign in March 1990 to promote two new products, cherry ginger ale and lemon ginger ale. The expression "main squeeze" was used in this campaign. The campaign consisted of seven television commercials, twenty-nine radio commercials, print advertisements and some promotional items, such as towels and t-shirts. Of these, only one of five radio commercials for Canada Dry lemon ginger ale used the expression "main squeeze." [1] The print ad placed the expression "your new main squeeze" above a picture of a lemon squeezed by two cans. The towels and t-shirts displayed the phrase "your new main squeeze" with the Canada Dry trademark.[2]

Citrus filed a three count complaint seeking relief under the Lanham Trademark Act of 1946. Count I alleges trademark infringement under 15 U.S.C. § 1114(1);

Count II alleges unfair competition under 15 U.S.C. § 1125(a); Count III alleges trademark infringement under the common law of Maryland. Citrus also moves for a preliminary injunction to enjoin Defendants from using the trademark "MAIN SQUEEZE" in any manner. In doing so, Citrus claims that Defendants are using the trademark to promote, advertise and sell fruit juice drinks in direct competition with Citrus.

Defendants have not published the print ad or distributed the towels and t-shirts since the time Citrus filed the present complaint. Additionally, the company in charge of Defendants' advertising campaign instructed radio stations broadcasting the radio commercials to substitute another commercial pending the outcome of the preliminary injunction motion. Cadbury has also instructed Canada Dry not to use any other materials (signs, point-of-sale materials, etc.) containing the "main squeeze" expression.

## DISCUSSION

■ It is well settled in this circuit that the standard for interlocutory injunctive relief under Fed.R.Civ.P. 65(a) is the balance-of-hardship test. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir.1977).[3] Four factors must be considered:

1. the likelihood of irreparable harm to plaintiff if the preliminary injunction is denied;

2. the likelihood of harm to the defendant if the requested relief is granted;

3. the likelihood that the plaintiff will succeed on the merits; and

4. the public interest.

*Blackwelder*, 550 F.2d at 193–196.

In determining what relative emphasis to give these elements, the *Blackwelder* court stated:

---

**1.** The radio commercial uses the term in the following manner: "Canada Dry Ginger Ale, the light, dry taste that's been a favorite for years, just got hitched to a new main squeeze—the light, clean, refreshing taste of lemon—and together—[sound effects]—they're lighting up the town. Make new Canada Dry Lemon and Diet Lemon Ginger Ale—your new main squeeze!"

**2.** On the towels, the Canada Dry trademark appears directly beneath the phrase at issue. On

the t-shirts the phrase is on the front and the Canada Dry trademark is on the back.

**3.** For a more recent statement and application of this test, see *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir.1991); *L.J. v. Massinga*, 838 F.2d 118 (4th Cir.1988), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989).

The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. *Id.* at 196. If, however, the balance is struck in favor of the defendant, the likelihood of success becomes a more significant factor. "The importance of probability of success increases as the probability of irreparable injury diminishes." *Id.* at 195. The above four elements will now be discussed seriatim.

### A. Irreparable Harm to Plaintiff

Citrus alleges that it will incur irreparable harm because of the likely confusion between its products and those of Canada Dry. In other words, Citrus alleges that if the injunction is not granted it will suffer confusion and damage caused by loss of control of the quality of the goods associated with its trademark. This loss of control allegedly will result in injury to Citrus' good reputation. The plaintiff does not otherwise, or more specifically, state what irreparable injury will result without the requested equitable relief.

### B. Harm to Defendants

The likelihood of harm to Defendants if the injunction should issue is both more distinct and more readily identifiable. If the injunction is granted, for example, Defendants would be required to discontinue use of their radio commercial, to forego additional print advertising, to withhold or refrain from distributing promotional items such as towels and t-shirts, and to refrain from using valuable point-of-sale and premium materials created for Cadbury's bottlers pending trial. They value this damage to the campaign at over $100,000.00.

Balancing the likelihood of alleged irreparable harm to Citrus and the likelihood of alleged harm to Defendants, this Court does not find a dramatic imbalance in favor of either party. The harm alleged by Citrus is unspecific at best, and the likelihood of that harm even less certain. In fact, association with Canada Dry products, which have enjoyed a favorable status in the carbonated beverage industry for nearly three quarters of a century, might actually benefit Citrus' fledgling company. Additionally, Citrus' evidence does not compel this Court to find that there is a likelihood of confusion or damage caused by a loss of control of the goods associated with the trademark, the injury alleged in this case.

Although the alleged injury to Citrus could be significant if it were actual, the likelihood of injury is attenuated. Conversely, the injury to Defendants is certain if the injunction should issue. This Court, then, must balance uncertain, and possibly great harm to a small company against certain harm to a very large company. In this light, this Court finds that the balance is not struck distinctly in favor of either party. Therefore, this Court must consider more the likelihood of success on the merits because, as stated in *Blackwelder*, "[t]he importance of probability of success increases as the probability of irreparable injury diminishes." *Blackwelder*, 550 F.2d at 195.

### C. Likelihood of Success on the Merits

The third factor to be considered under the *Blackwelder* test is the likelihood that Citrus will succeed on the merits of its claims of trademark infringement. Under 15 U.S.C. § 1114(1), likelihood of success on the merits in a trademark infringement case is measured by the likelihood of confusion of the counterfeit with the genuine goods. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984). To determine whether there is a likelihood of confusion, the courts view several factors:

1) the strength or distinctiveness of the mark;

2) the similarity of the marks;

3) the similarity of the goods/services the marks identify;

4) the similarity of the facilities the two parties use in their businesses;

5) the similarity of the advertising used by the two parties;

6) the defendant's intent;

7) actual confusion.

*Pizzeria Uno*, 747 F.2d at 1527. The Fourth Circuit added that in applying these factors, it should be done with the caution expressed that "[n]ot all these [factors] are always relevant or equally emphasized in each case." *Pizzeria Uno*, 747 F.2d at 1527 (quoting *Modular Cinemas of America, Inc. v. Mini Cinemas Corp.*, 348 F.Supp. 578, 582 (S.D.N.Y.1972)).

In consideration of the above factors, Citrus alleges that it is likely to succeed on the merits of its trademark infringement action because: (1) the mark "MAIN SQUEEZE" is a strong mark, (2) Defendants are using an identical mark, (3) Citrus and Defendants both use the mark to identify fruit juice drinks, and their customers are the same, and (4) Citrus can demonstrate actual confusion.

In support of its allegations, Citrus states that its mark is strong because it is suggestive and arbitrary, because it does not identify a characteristic or quality of the goods, and that such a mark will ordinarily be protected against use by another. Citrus also states that because the mark was given a federal registration, it is inherently strong. It alleges that actual confusion has been shown through letters from a customer, a supplier, and an inquiry by the sales manager of a local radio station, and that that showing satisfies the likelihood of confusion requirement. Citrus' second and third arguments were not more fully developed.

Defendants argue, in light of the *Pizzeria Uno* factors, that Citrus is not likely to succeed on the merits of the trademark infringement action because: (1) Defendants' use of the words "main squeeze" is a "fair use" and is expressly permitted by the trademark laws, (2) Defendants did not use, and are not using, the term "main squeeze" as a trademark, (3) there is nothing about the term "main squeeze," as used by Defendants, that identifies the source or origin of their lemon ginger ale, (4) Defendants had no intention of using the words "main squeeze" as a trademark, (5) Citrus has introduced no evidence to suggest that the phrase actually functions as a trademark, (6) the alleged trademark does not appear anywhere on Defendants' packages, and (7) Defendants' use of the term "main squeeze" was in good faith.

In support, Defendants argue that 15 U.S.C. § 1115(b)(4), which provides for a "fair use" defense to claims of trademark infringement, applies in this case. They assert that their use of the words "main squeeze" fits squarely into the provision as descriptive use. Defendants also offer an abundance of case law to illustrate how words may be used in advertising in a way that is not necessarily as a trademark. In support of their argument that the term "main squeeze" is not used as a trademark, Defendants state that they used the well-known Canada Dry trademarks and trade dress together with the "Young at Heart" theme as the trademark for the lemon ginger ale. They add that the words were used as part of an ordinary English phrase and attention was focused on the brand name, not the phrase. Finally, Defendants argue that their use of the term "main squeeze" was in good faith and that the prominent use of the Canada Dry trademark should remove doubt about their intentions.

It has been stated that in trademark infringement cases, the trial judge may draw on his own experience and observation to make an informed judgment as to likelihood of confusion. *Baker v. Simmons Co.*, 307 F.2d 458 (1st Cir.1962). As the United States Court of Customs and Patent Appeals stated in *Warner–Hudnut, Inc. v. Wander Co.*, 280 F.2d 435, 436 (U.S.Ct. of Customs and Patent Appeals 1960), "[i]n determining whether a likelihood of confusion exists between trademarks 'the judgment of the eye and ear is more satisfactory than evidence from any other source.' " (quoting *Glenmore Distilleries Co. v. National Distillers Products Corp.*, 23 F.Supp. 928, 931 (DC Va.1938), *aff'd*, 101 F.2d 479 (4th Cir.1939), *cert. denied*, 307 U.S. 632, 59 S.Ct. 835, 83 L.Ed. 1515 (1939)). With this discretion in mind,

the likelihood of confusion standard will be addressed below.

■ Under federal law, a "trademark" is defined as any word, name, symbol, or device used to identify and distinguish goods from those manufactured or sold by others and to indicate the source or origins of those goods. 15 U.S.C. § 1127. Trademark confusion, and therefore infringement, occurs when someone uses a trademark owner's mark to identify or distinguish goods that are not manufactured or sold by the trademark owner. If, however, the mark is not used to identify the source of the goods, no infringement may be found. Stated differently, "[u]nless attention is drawn to the particular word or term *as being indicative of source of origin* of that product, the term is not being used as a trademark." *Schmid Laboratories v. Youngs Drug Products Corp.*, 482 F.Supp. 14, 21 (D.N.J.1979) (emphasis in original) (discussing the "fair use" doctrine of 15 U.S.C. § 1115(b)(4)). Because of this standard, success on this trademark infringement action requires that the plaintiff show that "a likelihood existed of confusion in the marketplace regarding the *source* of the goods marketed by defendant resulting from its advertising use of the phrase ['main squeeze'].…" *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 298 F.Supp. 908 (S.D.N.Y.1969), *aff'd*, 421 F.2d 352 (2d Cir.1970), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970).

■ It is not a trademark infringement to use words in their ordinary, rather than in their special, trademark meaning. 15 U.S.C. § 1115(b)(4). Additionally, where phrases or slogans are disseminated in good faith to describe a product or service, they likely do not function as trademarks. See *M.B.H. Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d 50, 55 (7th Cir.1980). As codified in the Lanham Act, 15 U.S.C. § 1115(b)(4), it is a defense to a claim of trademark infringement that:

… the use of the … term … charged to be an infringement is a use, otherwise than as a trade or service mark, of … a term … which is descriptive of and used fairly and in good faith only to describe

to users the goods or services of such a party.…

15 U.S.C. § 1115(b)(4). This defense is well-known as the "fair use" doctrine.

■ Federal trademark registration does not provide exclusive rights in the words registered. Stated differently, "[t]he owner of a registered mark 'may not appropriate to itself common English slang terms and thus prevent others from using such phrases in their descriptive sense.'" *M.B.H. Enterprises*, 633 F.2d at 55 (quoting *B & L Sales*, 421 F.2d at 354). In *Field Enterprises Educ. Corp. v. Cove Indus., Inc.*, 297 F.Supp. 989 (E.D.N.Y.1969), the court rejected plaintiff's claim of trademark infringement, and held that

[i]t is undesirable that words in common use be given a monopoly under the trademark laws. For this reason, in determining whether there has been infringement, a distinction is made between primary and secondary uses. While the secondary use may be protected, the use of a common word in its primary sense may not be.

*Id.* at 995 (citations omitted).

■ In determining the likelihood of confusion, then, and thus the likelihood of success on the merits, the Court must consider Defendants' second and fourth arguments, namely the primary, or colloquial use of the words "main squeeze." "Main squeeze" is a common slang term, the general use of which Citrus cannot prevent by registering it in connection with certain goods. See *B & L Sales*, 421 F.2d at 354; *Kiki Undies Corp. v. Alexander's Dept. Stores, Inc.*, 390 F.2d 604 (2d Cir.1968). It seems clear enough that the phrase "your new main squeeze" as used by Defendants on the print advertisements, towels and t-shirts, and the phrase "main squeeze" as used in the radio commercials, was intended only to engender a sense of romance, incite enthusiasm, and create an association between the consumer and the product, lemon ginger ale. The phrase projects a familiar, playful image, with which Canada Dry wanted to associate its new ginger ale. The fact that "main squeeze" is used by Defendants as a symbol to attract public

attention does not mean it is being used as a trademark. See *Schmid Laboratories,* 482 F.Supp. 14. It is unchallenged that these words carry familiar meaning in the modern lexicon, and apparent that the phrase was used descriptively.

■ Citrus' arguments, which do not prevail, will now be addressed in order. Citrus' argument that its mark is strong because it is arbitrary, and therefore entitled to greater protection, is not compelling in this instance to show a likelihood of confusion because it has not shown that the Defendants actually used the words "main squeeze" as a mark. It is afforded protection from trademark infringement by the Lanham Act, but words used in arbitrary marks are not necessarily protected when they are not used as marks. While it is true that Citrus' federal registration is *prima facie* evidence of its exclusive right to use the trademark, it is not true that the registration provides them the right to exclude others from using the words in their primary, colloquial meaning. See 15 U.S.C. § 1115(b)(4).

Citrus' argument that Defendants are using an identical mark is also without merit. Defendants admit using the words "main squeeze" in their advertising campaign to promote their new product lemon ginger ale, but Citrus has not offered any evidence that the words were used as a trademark, to identify the source of the product, or that Defendants intended to use the words to identify the source of the product. The Canada Dry trademark and trade dress are displayed prominently on the product and promotional items, and in fact, the words "main squeeze" do not appear on any label, package, wrapper or container of the product. Additionally, Defendants used the words ".your new main squeeze" in the print advertisements, and on promotional materials, not the words "main squeeze" alone. In this way, Citrus' argument that Defendants used an identical mark is not compelling.

Citrus also argues that Defendants used the mark to identify fruit juice drinks and that their customers are the same. While Defendants admit that both parties' prod-

ucts are, or become, fruit flavored beverages, they rightly distinguish the products, stating that Citrus' products are fruit juice concentrates and fruit flavored mixers whereas Defendants' product is lemon ginger ale. Citrus' product is sold in bulk and ready to mix form, and Defendants' product is sold only in bottles and cans. The most compelling evidence of consumer identification is in Citrus' trademark registration, which states that the mark "MAIN SQUEEZE" is to be used for "fruit juice concentrates and fruit-juice drink concentrates sold in bulk to be dispensed through drink-dispensing equipment."

■ With regard to the alleged incidents of actual confusion, the Court is not persuaded that these isolated incidents are representative of the likelihood of public confusion. Although Citrus' supplier and bottler and a local radio station sales manager allegedly inquired about a "tie-in" with the Defendants, those inquiries do not reflect a confusion about the source of the lemon ginger ale. None of them alleges that the lemon ginger ale was produced by Citrus, nor that the "Main Squeeze" products were produced by Defendants. No confusion regarding the source of the products is apparent. Additionally, even if these occurrences were instances of confusion, "[i]solated cases of confusion do not justify a finding that actual confusion is established nor warrant the entry of a judgment for damages." *Harad v. Sears, Roebuck & Co.,* 204 F.2d 14, 19 (7th Cir. 1953), *cert. denied,* 346 U.S. 914, 74 S.Ct. 274, 98 L.Ed. 410 (1953). The showing of a mere trace of confusion is insufficient. *Everest & Jennings, Inc. v. E & J Mfg. Co.,* 263 F.2d 254, 260 (9th Cir.1958), *cert. denied,* 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed.2d 1254 (1959).

This Court has weighed the elements to be considered in determining the likelihood of confusion, and finds that it does not exist in this circumstance for the following reasons: (1) Citrus has not shown that Canada Dry's use of the phrase "main squeeze" in its advertisement campaign created a likelihood of confusion in the marketplace regarding the source of its

new product, lemon ginger ale. While the in-house video commercial shown at the hearing demonstrates that the words "main squeeze" are used to promote the new products, Canada Dry is clearly identified as the source of the new product. It is difficult to conceive of a consumer confusing the source of Canada Dry lemon ginger ale with Main Squeeze products insofar as the words are not affixed to the product by tag, label or otherwise, a fact which is unchallenged; (2) Canada Dry's use of the words "main squeeze" in the radio commercial was not as a functional trademark, but rather as a colloquial, descriptive image. The print ad where the words "your new main squeeze" appear below a picture of a lemon squeezed between two cans of Canada Dry lemon ginger ale clearly identifies the source of the product. The question of source identification arises legitimately in the case of the t-shirts, where the Canada Dry trademark is on the back, and nothing appears on the front except the words "your new main squeeze," but the "fair use" doctrine protects even this type of usage as fair and permissible as long as the phrase is used descriptively. See 15 U.S.C. 1115(b)(4); and, finally, (3) in considering Defendants' good faith in this matter, a factor to be considered in determining likelihood of confusion, the Court finds that Defendants' actions after the institution of this action amply illustrate their intent.

### D. Public Interest

The fourth factor to be considered in determining the need for equitable relief is the public interest. Citrus claims that "[t]he public has a right not to be deceived or confused," and that Canada Dry's use of the words "main squeeze" in its promotion of lemon ginger ale does create such confusion. Citrus argues, therefore, that the issuance of a preliminary injunction is in the public's interest. Defendants, however, claim that the public's interest, as codified in § 1115(b)(4) of the Lanham Act and the case law of the past century, is not promoted when a party seeks to appropriate to itself alone the use of common English expressions. This policy is considered thoughtfully in *Jean Patou, Inc. v. Jacque-*

*line Cochran, Inc.,* 201 F.Supp. 861 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir. 1963):

> While it is desirable to protect a person who has built up a public association with certain products under his trademark from having his business taken by somebody else, it is also undesirable to block the channels of expression by giving protection to everyone who may go out and appropriate an ordinary descriptive word for his own business use....

*Id.* at 865 (citations omitted).

This Court concludes that in this case, it is unlikely that Canada Dry will take Citrus' business if the injunction does not issue.

It has long been recognized that federal statutory provision is a bench mark of that which is in the public interest. See *Blackwelder* at 197. In light of this standard, and the proviso of the "fair use" doctrine, the Court is persuaded by the defendants' argument, and determines that a preliminary injunction in this matter is not in the public's interest.

### CONCLUSION

Although this Court notes the significant disparity between the size and resources available to the two companies, it acknowledges the speculative nature of the injuries alleged by Citrus. Additionally, in weighing the factors set out in *Pizzeria Uno* to determine the likelihood of confusion, this Court finds that the weight of the evidence favors Defendants. Therefore, in light of (1) the paucity of evidence of irreparable injury to Citrus if the injunction should not issue, (2) the clear showing of injury to Defendants if it should, (3) a serious consideration of the improbability of success on the merits, and (4) regard for the public interest in conforming to federal statutory provisions, this Court concludes that Citrus' motion for preliminary injunction should be denied.