**ELI LILLY AND COMPANY and Elizabeth Arden, Inc., Plaintiffs,**

v.

**REVLON, INC., Defendant.**

**No. 83 Civ. 8504(RWS).**

United States District Court,
S.D. New York.

Dec. 8, 1983.

Nims, Howes, Collison & Isner, New York City, for plaintiffs; Oliver Howes, William Hansen, New York City, of counsel.

Fish & Neave, New York City, for defendant; Herbert F. Schwartz, Rynn Berry, Vincent N. Palladino, Susan Progoff, New York City, of counsel.

SWEET, District Judge.

Plaintiffs Eli Lilly and Company ("Eli Lilly") and its subsidiary Elizabeth Arden, Inc. ("Arden") commenced this action on November 22, 1983 against defendant Revlon, Inc. ("Revlon") claiming a violation of § 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a), infringement of common law trademark and unfair competition. Eli Lilly and Arden now seek a preliminary injunction against the use of the notation "lip repair cream" in connection with the advertisement, offering for sale or distribution of Revlon's lip treatment cream which is scheduled to be shipped to customers nationwide on December 12, 1983. The parties appeared before this court for an evidentiary hearing and oral argument on December 6, 1983. For

the following reasons, plaintiffs' motion for a preliminary injunction is denied.

### Prior Proceedings

Eli Lilly and Arden commenced the action on November 22, 1983 and obtained an order to show cause setting November 29 as a hearing date for their motion for preliminary injunction. The Honorable Richard Owen to whom the action was assigned, recused himself on November 22. The parties stipulated to a one-week adjournment of the hearing on the motion to December 6. The action was reassigned on December 1, 1983, and the hearing went forward on December 6, the adjourned date. Affidavits and memoranda were submitted and four witnesses testified. No discovery has taken place.

The court has been greatly assisted by the careful and cogent presentation of counsel for both parties which has served to simplify the issues in this multimillion dollar dispute between two leading companies in the beauty aid industry. While the issues may merit a more detailed treatment than that which follows, the exigencies of time resulting from Revlon's December 12 launch date and the reviewability of the District Court's decision in actions such as this mandate this early decision.[1]

### Facts

The facts relating to the actions are not disputed in any substantial degree. Arden has been in the business of selling cosmetics, fragrances and beauty treatment products for over seventy years. Department stores constitute the greatest number of outlets for these products. To a limited extent, they are also distributed in prestige drug stores. Arden also distributes its products through its own Elizabeth Arden beauty salons.

During 1981 and 1982, Eli Lilly developed for Arden a revolutionary and highly effective composition for use as a lip treatment cream. There is a patent application pending in the United States Patent and Trademark Office for this composition. In early 1983, Arden began to market the composition as a lip treatment cream called "LIP–FIX creme." An application to register LIP–FIX is currently pending in the United States Patent and Trademark Office. The principal purpose of the cream is to smooth over wrinkles in the lips to assist the application of lipstick and to prevent its smearing or bleeding.

More than $4 million has been spent to promote the LIP–FIX mark. The LIP–FIX treatment cream has been extensively advertised in print and broadcast media, and more than two million units of LIP–FIX creme have been sold since April 1983 at an initial price to the consumer of $10 a unit.

Arden's LIP–FIX lip treatment cream is part of Arden's Visible Difference cosmetics line. The packaging for this line of cosmetics is a distinctive pink, red and gold, featuring the Visible Difference trademark, the Elizabeth Arden name and the descriptive terms of the products, i.e. "eyecare concentrate in a tube," "eyecare concentrate," "refining moisture-cream complex," "special moisture-formula for bodycare" and "moisture-creme soap."

Arden modified this packaging somewhat for Visible Difference LIP–FIX creme to draw attention to the new product in the line. The LIP–FIX creme packaging is pink and white with the Visible Difference trademark and the Elizabeth Arden name. The advertising for the product includes a distinctive "before and after" photograph to demonstrate the effectiveness of the product. Arden and Eli Lilly have spent over $4 million in promoting LIP–FIX on television, in print advertising and on the radio. The "LIP–FIX creme" has sold well and its considerable success was duly noted by Revlon.

---

1. As the Court of Appeals has noted, "[w]here the denial rests on a finding (confusion of marks) which we may determine on an equal basis with the trial judge, we need not uphold the denial." *American Home Products Corp. v.* *Johnson Chemical Co.,* 589 F.2d 103, 106 (2d Cir.1978) (quoting *Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc.,* 428 F.2d 379, 380 (2d Cir. 1970).

Revlon is also a major marketer of cosmetic products in a number of different lines. In December, 1980, Revlon introduced a new line of skin treatment products under the trademark European Collagen Complex and the house mark Revlon. Revlon's European Collagen Complex line features treatment products. The first two products, introduced in December 1980, were an "exceptional beauty cream," packaged in a jar, and an "exceptional beauty lotion," packaged in a bottle. Revlon began selling its "exceptional beauty cream" packaged in a tube to department stores in March 1983, and to drug stores and mass volume retailers in August 1983.

Revlon currently intends to add four products to its European Collagen Complex line. Revlon's European Collagen Complex "body care concentrate" and "refining facial" are scheduled to be shipped to department stores in January 1984 and European Collagen Complex "nourishing cleanser" will be shipped to department stores, drug stores and mass volume retailers in March 1984. The fourth new product, the one at issue in this case, is Revlon's European Collagen Complex "lip repair cream," scheduled to be shipped to department stores, drug stores and mass volume retailers on December 12, 1983. At present some $600,000 worth of orders have been received by Revlon. Based on this response, Revlon anticipates $1,720,000 in sales by the end of the year and $4 million in sales by June 1984. The consumer unit price is $6.50.

The containers for Revlon's European Collagen Complex "exceptional beauty cream" and "exceptional beauty lotion" are a distinctive combination of taupe and white, with purple lettering and a silver band. Each of these containers bears the European Collagen Complex trademark printed in the same distinctive type style, the Revlon name and the descriptive term for the product, i.e., "exceptional beauty cream" or "exceptional beauty lotion." The advertising for these products incorporates the color purple and features a distinctive "sequential" photograph of a woman's face.

The packaging for Revlon's new European Collagen Complex "nourishing cleanser" and "refining facial" closely resembles the packaging for the existing European Collagen Complex products, "exceptional beauty cream" and "exceptional beauty lotion." The packaging for European Collagen Complex "body care concentrate" and "lip repair cream" is somewhat different. Both products display the European Collagen Complex trademark in its distinctive type style, the Revlon name and the colors purple, white, silver and taupe, but both display the colors in different combinations.

The "lip repair cream" packaging presents the biggest change. It is predominantly purple and the descriptive term for the product "lip repair cream," is displayed more prominently than are the descriptive terms for the other products in the line. In fact, "lip repair cream" is in larger letters than even "European Collagen Complex" or the housemark "Revlon," and is positioned on the box and tube in much the same manner as "LIP–FIX Creme" is positioned on its product by Arden. Revlon asserts that this difference is to draw consumer attention to a new product in the line, which is intended for a different use than the other products in the line. The existing products in the European Collagen Complex line and two of the new products are facial products and dressed in similar packaging. According to Revlon, the lip repair cream and the body care concentrate are dressed differently to indicate that they are lip and body products, respectively.

Revlon, a leader in the sale of lipsticks, recognized the need for a product to compete with "LIP–FIX Creme" and commenced the development of Revlon's "lip repair cream" early this year. The decision to market the product as it is presently constituted was made in mid-summer. Revlon spent $900,000 in developmental costs of packaging and promotional materials for its "lip repair cream."

The selling sheet describing the product was distributed to the Revlon field force on September 30, 1983 and came into the

hands of Arden and Eli Lilly and its counsel by mid-October. The price of Arden's "LIP–FIX Creme" was reduced to $6.50 to meet the Revlon price, and this litigation followed as described above without prior communication between the parties. The appearance of the products at issue here and in the competing lines is best set forth in the color photograph which is Exhibit 54 to the affidavit of Annette Golden, sworn to on December 4, 1983.

Both Revlon and Eli Lilly agree that lip repair cream or treatment is an appropriate description for each of the products at issue and is a description recognized in the beauty aid field. Aside from its cosmetic effect, there is no evidence that either product in fact alters or fixes or repairs lips in a literal sense. The products are directly competitive, and no evidence has been presented as to any difference in the quality of the products.

### Conclusions of Law

A preliminary injunction may be granted in this Circuit only upon "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). This same standard applies in trademark infringement cases. *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42 at 45 (2d Cir.1983); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78–79 (2d Cir.1981); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir. 1979).

■ This Circuit has recognized the correlation between success on the merits and irreparable injury in trademark infringement actions. *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir.1979); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971). The key issue in a trademark infringement

claim is whether there is a likelihood that consumers will be confused as to the source of the goods in question. *Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 253 (2d Cir.1982); *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1129 (2d Cir.1982); *American Int'l Group, Inc. v. London American Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981); *Vitarroz v. Borden, Inc.*, 644 F.2d 960, 966 (2d Cir.1981). If likelihood of confusion is demonstrated, irreparable injury is presumed. *See In re Vuitton, supra.*

■ In order to succeed on the merits of its claims of false designation of origin under § 43(a) of the Trademark Act of 1946, Eli Lilly and Arden must show that Revlon's activity is likely to cause confusion or to deceive purchasers as to the source or origin of Revlon's lip treatment cream, *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 1294 (S.D.N.Y. 1972), or as to endorsement or sponsorship of its lip treatment cream. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir.1979); *Syntex Laboratories, Inc. v. Norwich Pharmacal Company*, 437 F.2d 566, 568 (2d Cir.1971). The same facts which substantiate an action for trademark infringement under § 32 of the Trademark Act of 1946, 15 U.S.C. § 1114, will make out an action for false designation of origin under § 43. *Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004, 1012–13 (5th Cir.1975), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975); *Cuisinarts, Inc. v. Robot Coupe Int'l Corp.*, 509 F.Supp. 1036 (S.D.N.Y.1981). Thus, to obtain injunctive relief under § 43(a), plaintiffs must establish a likelihood of confusion or a tendency to mislead. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., supra.*

### Likelihood of Success on the Merits

The initial inquiry is whether the name LIP-FIX, for lip treatment cream is a protectible trademark. If it is, the second inquiry is whether Revlon's use of the phrase "lip repair cream" is likely to cause

confusion as to the source of its product and to lead consumers to believe that the product is the one distributed by Arden.

■ LIP–FIX is not a registered trademark although an application to register LIP–FIX is currently pending in the United States Patent and Trademark Office. Registration, however, is not a prerequisite to remedial relief under § 43(a) of the Trademark Act of 1946. *DC Comics, Inc. v. Powers*, 465 F.Supp. 843, 848 (S.D.N.Y. 1978).

■ A mark may be generic, descriptive, suggestive, or arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). A generic mark is not entitled to protection under any circumstances. A descriptive mark is entitled to protection only if it has acquired secondary meaning. 15 U.S.C. § 1052(f); *see also Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129, 133 (S.D.N.Y.1972). A term that is suggestive or arbitrary or fanciful is entitled to registration without proof of secondary meaning. *Id.* at 11.

In this case, Arden's mark LIP–FIX for lip cream seems to fall somewhere between descriptive and suggestive, and closer to the former than the latter. It is often difficult to distinguish between a descriptive and a suggestive mark. *See, e.g., Franklin Knitting Mills, Inc. v. Fashionit Sweater Mills, Inc.*, 297 F. 247, 248 (2d Cir.1923), *aff'd*, 4 F.2d 1018 (2d Cir.1925). The following distinction was offered by the Court of Appeals in *Abercrombie & Fitch, supra*, at 11 (quoting *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y. 1968)):

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

It has also been said that "a product designation is descriptive and therefore invalid as a trademark if, as understood in its normal and usual sense, it conveys to potential customers the characteristics, functions, qualities, ingredients, properties or uses of the product." *Ralston Purina, supra*, at 133.

Arden maintains that its mark was adopted because it is a unique combination of terms and because the term "fix," although common in connection with hardware, has a distinctive incongruity in the cosmetics field. Revlon, on the other hand, contends that LIP–FIX is "a splendidly descriptive name" because "LIP–FIX creme" readily conveys the product's purpose—a cream to "fix" damaged lips.

■ If LIP–FIX is a descriptive mark because it conveys to potential customers the use of the product, it is a valid trademark if it has acquired secondary meaning. *Ralston Purina, supra*, at 133. The burden of proof is on Eli Lilly and Arden to establish secondary meaning. *See Jean Patou, Inc. v. Jacqueline Cochran, Inc.*, 201 F.Supp. 861, 864 (S.D.N.Y.1962), *aff'd*, 312 F.2d 125 (2d Cir.1963).

■ More than $4 million has been spent in advertising and promoting LIP–FIX and more than two million packages have been sold since April 1983. LIP–FIX has also received considerable attention in fashion magazines. The product's remarkable success and the attention it has received indicate that secondary meaning may have been established. However, proof of secondary meaning is difficult. On a motion for preliminary injunction, plaintiffs' proof must meet the burden of showing probable success. *Ralston Purina, supra* at 134–35. Popularity and sales alone cannot establish secondary meaning. Money spent promoting the product merely indicates the effort to establish secondary meaning not the success of the effort. *Id.* at 134. Proof of extensive advertising is alone insufficient to establish secondary meaning. *Combe, Inc. v. Scholl, Inc.*, 453 F.Supp. 961 (S.D.N.Y.1978). Moreover, the product has been on the market a relatively short time and is part of the Visible Difference line of beauty treatment products. There has been no showing that the public has

come to regard LIP–FIX as a designation of source. Therefore, I conclude that plaintiffs have failed to demonstrate that LIP–FIX has acquired secondary meaning.

However, even if LIP–FIX has acquired secondary meaning contrary to my present conclusion and is a valid trademark, I conclude that plaintiffs have not demonstrated likelihood of success of confusion. To determine the likelihood of confusion as a result of Revlon's use of the term "lip repair cream," it is helpful to consider the familiar *Polaroid* factors relevant to this action. These factors, enunciated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), include: the strength of the plaintiff's mark, the degree of similarity between the two marks, the proximity of the products, actual confusion, the defendant's good faith, the quality of the defendant's product, and the sophistication of the buyers. In this case, involving two directly competitive products, the most pertinent factors are: (1) the strength of the LIP–FIX mark, (2) the degree of similarity between the two marks, (3) defendant's good faith, and (4) sophistication of the buyers.

### 1. The Strength of the Mark

■ The "strength" of a mark depends on its "origin-indicating" quality in the eyes of the purchasing public. As the court noted in *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir. 1979):

> The term "strength" as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source.

■ For the purposes of assessing their strength, marks are generally classified as generic, descriptive, suggestive, or arbitrary or fanciful, with generic marks being the weakest and subject to no protection, while arbitrary or fanciful marks are the strongest. *Id.* Marks that lack distinctiveness and fall on the lower end of the scale are classified as weak and are entitled to a limited scope of protection. *See Sun Banks of Florida v. Sun Federal Savings & Loan*, 651 F.2d 311, 315–16 (5th Cir. 1981); *Olay Co. v. Cococare Products, Inc.*, No. 81–4102, slip op. at 25–26 (S.D. N.Y. April 18, 1983).

As discussed earlier, the mark LIP–FIX is descriptive because it indicates that the product repairs damaged lips. LIP–FIX is therefore relatively weak mark.

### 2. Similarity of the Marks

■ The likelihood of confusion in a side-by-side comparison of the lip creams is slight, but the proper test is whether confusion is likely when a consumer, familiar to some extent with plaintiffs' mark, is presented with defendant's goods alone. *Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d 891, 893 (2d Cir.1981) (quoting *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir.1978). *See Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1133 (2d Cir.1982). In these circumstances, a consumer might well believe that European Collagen Complex lip repair cream was in fact the plaintiffs' LIP–FIX creme.

■ The fact that both products at issue in this case are marketed as parts of a larger line of products reduces the likelihood of confusion based on the similarity of the names. It is undisputed that the Visible Difference cosmetics line and the European Collagen Complex line are directly competitive, and there has been no showing of actual confusion by consumers as between the two lines. Of course, Revlon's "lip repair cream" is yet to be sold. Both lip care products, however, are packaged differently from the rest of their lines and indicate the introduction of two new directly competitive products, rather than continuation of the existing cosmetic lines.

The two marks, "LIP–FIX creme" and "lip repair cream," are undeniably similar in meaning. The words "fix" and "repair" are synonyms. "The use of different words with similar meaning may tend to confuse." *American Home Products v.*

*Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir.1978). On this theory, the Court of Appeals reversed an order denying a preliminary injunction with respect to "Roach Inn" for insect traps as an infringement of the registered mark "Roach Motel." *Id.*

However, *American Home Products* differs from this case. First, and most important, the Roach Motel mark was very strong. The Court stated: "[w]e think ... that ROACH MOTEL is at least a suggestive mark, rather than a descriptive mark—if, indeed, it is not altogether an arbitrary mark." *Id.* at 106 (footnote omitted). As a result, no showing of secondary meaning was necessary. In addition, the fact that the mark was registered created a strong presumption of its validity. In this case, the LIP–FIX mark is, at best, weak and, at worst, entitled to no protection whatsoever. Moreover, in *American Home Products*, there was "no reasonable explanation ... offered to show the second comer's need to come so close to the mark." *Id.* at 107. In the present case, Revlon is required by statute to describe its product on the package. For these reasons I conclude *American Home Products* is not controlling.

However, it is undeniable that regardless of the weakness of LIP–FIX as a mark, the terms "LIP–FIX" and "lip repair cream" are similar if not identical in meaning.

3. *Revlon's Good Faith in Adopting "lip repair cream"*

■ Revlon maintains that it chose the caption "lip repair cream" because of the names tested it most clearly identified the product function. Tr. at 74. Moreover, the use of a descriptive term on the package is required by the Fair Packaging and Labeling Act, 15 U.S.C. § 1451 *et seq.*, and the related regulations, 21 C.F.R. § 701.10 *et seq.* The only indication that Revlon was attempting to simulate Arden's mark is that the descriptive term is in larger letters. This is insufficient to support a finding of bad faith. As Judge Leval noted in *E.R. Squibb & Sons, Inc. v. Cooper Laboratories*, 536 F.Supp. 523, 532 (S.D.N.Y. 1982):

In choosing a highly descriptive mark, [plaintiff] acted at its peril; where a second comer chooses a descriptive word to name its product, more than simple knowledge of the prior use is needed to show an intent to misappropriate goodwill.

4. *Sophistication of the Buyers*

No evidence was presented with respect to the sophistication of the buyers and loyalty to the Visible Difference and European Collagen Complex lines of products. It is significant to note, however, that the parties' lip repair creams will be sold in department stores at either Arden or Revlon counters which already feature the Visible Difference products of Arden or the European Collagen Complex products of Revlon, but not both. In drug stores, each parties' lip repair cream will be grouped with other products of that party. Arden makes few sales to mass volume retailers where Revlon sells its products. Revlon's products will not be sold at all in Arden's salons. Those who buy the parties' products most likely will already have experience with the parties' two clearly distinguishable product lines. The degree of attention given by the consumer to product choice can be presumed by the extent of advertising employed by both parties. While it is risky to generalize on the basis of a small but significant sample outside the record, I am prepared to conclude that women buying cosmetics are indeed sophisticated.

■ I conclude, therefore, based on the weakness of the mark LIP–FIX, the good faith of Revlon, and the sophistication of the consumer, that there is no substantial likelihood of confusion, despite the similarity between the two terms at issue.

*The Fair Use Doctrine*

■ Alternatively, I conclude that Revlon's use of the phrase "lip repair cream" is a fair use of that term. The fair use doctrine creates a statutory defense to a claim of infringement when the challenged term is

a use, otherwise than as a trade or service mark ... and [is] used fairly and in good faith only to describe to users the goods or services of such party ....

15 U.S.C. § 1115(b)(4); *see Abercrombie & Fitch, supra,* at 12; *Schmid Laboratories v. Youngs Drug Products Corp.,* 482 F.Supp. 14, 20 (D.N.J.1979).

■ The defense recognizes that trademark rights should not be extended to prevent a party from describing his product to the public. *See Venetianaire Corp. of America v. A. & P Import Co.,* 429 F.2d 1079, 1081–82 (2d Cir.1970). *See also Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1185 (5th Cir.1980). *Cf. King-Size, Inc. v. Frank's King Size Clothes, Inc.,* 547 F.Supp. 1138, 1164 n. 19 (S.D.Tex.1982) (section 1115(b)(4) is restatement of common law defense and is available in case of contestable mark). The defendant bears the burden of establishing fair use. *Salton, Inc. v. Cornwall Corp.,* 477 F.Supp. 975, 988 (D.N.J.1979).

■ Revlon's lip treatment product carries both the housemark Revlon and the trademark European Collagen Complex, in addition to the caption "lip treatment cream." It does not appear that Revlon is using "lip repair cream" as a trademark. A trademark is "a distinctive mark, symbol, or emblem used by a producer or manufacturer *to identify and distinguish his goods from those of others.*" *Schmid Laboratories, supra* at 20 (quoting *Educational Development Corp. v. Economy Co.,* 562 F.2d 26, 28 (10th Cir.1977)). Revlon's use of the word "repair" is only unfair to plaintiffs if it is using it in a trademark sense. In this case, Revlon's word "repair" is a common or primary use of the word. Revlon has gone to great lengths to demonstrate the use of "repair" in the cosmetics industry. Lip repair cream, therefore, does not infringe any secondary meaning that plaintiffs' LIP–FIX mark may have. *See Jean Patou, Inc. v. Jacqueline Cochran, Inc., supra* at 865 (use of the word "joy" in Joy of Bathing did not infringe plaintiff's trademark "Joy"). "Lip repair cream" merely describes the product.

■ Emphasis of a descriptive term on packaging does not show that the term is being used as a trademark. For example, in *Schmid Laboratories, supra,* at 20–21, the Court noted:

[W]hatever attention is drawn to "RIBBED" serves only to inform the prospective purchaser *what type* of condom is contained within, not whose product it is. "RIBBED" indicates one of this prophylactic's essential and distinguishing characteristics, that is, that it has a series of concentric ridges along its outer surface. It denotes the difference between this particular type of condom and the several others marketed by defendant under the "TROJAN" label. The fact that "RIBBED" is used by defendant "as a symbol to attract public attention" does not mean it is being used as a trademark. Virtually every aspect of a product's trade dress is intended to catch the eye of the purchaser. Unless attention is drawn to the particular word or term *as being indicative of source of origin* of that product, the term is not being used as a trademark.

Plaintiff contends that defendant uses "RIBBED" as a trademark because it is printed in capital letters and is the most prominent feature of defendant's packaging ... However, mere capitalization of "RIBBED" does not constitute trademark usage. *See Scanwell Laboratories, Inc. v. Department of Transportation,* 484 F.2d 1385, 1389 (Cust. & Pat. App.1973). This is true even when, as here, the lettering is larger than that used for *other* capitalized words on the package. (footnote omitted; emphasis in original).

Although Revlon has printed the words "lip repair cream" in large letters, those words do not indicate the origin of the product. The identification function is served by the European Collagen Complex trademark and the Revlon name, even though these are in smaller print.

*Balance of Hardships*

■ I have concluded that Eli Lilly and Arden have failed to establish likelihood of confusion between their product and Revlon's. In light of the weakness of the LIP–FIX mark and the descriptive nature of the phrase "lip repair cream," I also conclude that there are not sufficiently serious questions on the confusion issue to warrant injunctive relief.

Even if there are serious questions going to the merits, the balance of hardships does not tip decidedly in favor of Eli Lilly and Arden. Plaintiffs have spent $4 million promoting their product, and they assert that Revlon's use of the term "lip repair cream" will result in the loss of goodwill and reputation. Revlon has spent $900,000 in developing its lip treatment product and expects to receive orders for $1,720,000 of the cream by December 31, 1983. Aff. of Cheryl Scott at 4.

If a preliminary injunction is granted, Revlon would be put "entirely out of the market—at least until after trial and appeal (which would amount to months of paralysis at a critical time)," *Combe Inc. v. Scholl, Inc., supra,* at 967, or Revlon would have to forestall shipment of its product to retailers and incur the expense of repackaging the product. The consequences to Revlon would be measurable and heavy. On the other hand, Arden's damage if the injunction is denied would be limited largely to loss of sales. The loss of sales would probably be the rough equivalent of the sales gained by Revlon since the two are the sole factors in the market for this kind of lip treatment cream. *See id.*

For the foregoing reasons, the motion for a preliminary injunction is denied.

IT IS SO ORDERED.