**WONDER LABS, INC., Plaintiff,**

v.

**PROCTER & GAMBLE COMPANY, Defendant.**

**No. 88 Civ. 2557 (GLG).**

United States District Court, S.D. New York.

Jan. 17, 1990.

Lilling & Greenspan, White Plains, N.Y. (Burton L. Lilling, Bruce E. Lilling, Talay Hafiz, of counsel), for plaintiff.

Robin, Blecker, Daley & Driscoll, New York City (Marie V. Driscoll, Jon A. Lewis, of counsel), Dinsmore & Shohl, Cincinnati, Ohio (Thomas S. Calder, John J. Cummins, of counsel), for defendant.

GOETTEL, District Judge:

## I. FACTS

The plaintiff in this action, Wonder Labs, Inc., is a New York corporation that from approximately 1970 through 1987 manufactured, sold and distributed a toothbrush called "Dentist's Choice."[1] On November 14, 1972, Wonder Labs obtained a registration for the trademark "DENTISTS CHOICE" for use on toothbrushes.[2] Since approximately July 1986, the defendant, Procter & Gamble Co., an Ohio corporation, has utilized the phrase "the dentists' choice" in its advertising and promotion of regular and tartar control CREST toothpaste. In September 1987, the plaintiff became aware of the defendant's use of the phrase and sent Procter & Gamble a cease and desist letter. The defendant did not discontinue use of the phrase, and the plaintiff commenced suit in April 1988.

The plaintiff's complaint charges the defendant with trademark infringement in violation of section 32 of the Lanham Act, use of a false designation of origin in violation of section 43(a) of the Lanham Act, dilution of plaintiff's trademark rights in violation of section 368–c of the New York General Business Law and common law unfair competition. In defense of the action, the defendant primarily contends that it is not using "the dentists' choice" as a trademark but only fairly and in good faith to describe CREST toothpaste, that there is no likelihood of confusion, that DENTISTS CHOICE does not have a distinctive quality, and that the plaintiff has acquired no bona fide trademark rights because the products on which the trademark has been used have been sold in violation of federal law. Both parties have moved for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is on the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If that burden is met, the non-moving parties cannot simply rest on their complaint setting forth a valid cause of action. Fed.R.Civ.P. 56(e); *First Nat'l Bank v. Cities Services Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). They "must set forth specific facts showing that there is a genuine need for trial," Fed.R.Civ.P. 56(e), and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In determining whether that burden is met, however, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving parties. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). In what has now been dubbed the 1986 Supreme Court "trilogy," the Court reaffirmed its support for Rule 56 as an important procedural tool. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct.

---

1. The toothbrushes in question were manufactured to the plaintiff's specifications by the Owens Brush Division of Oral–B Laboratories. When that relationship terminated in October 1987, manufacture of Dentist's Choice toothbrushes ceased. Whether any inventory remains is unclear.

2. United States Patent Office Trademark Registration No. 947,235. The registration refers to the mark "DENTISTS CHOICE." The mark appeared on the plaintiff's product, however, as "Dentist's Choice." For the sake of clarity, we will refer to the plaintiff's registered mark "DENTISTS CHOICE" in uppercase letters and the defendant's use of the phrase "the dentists' choice" in lowercase letters.

2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Against this backdrop of summary judgment jurisprudence, we turn to the defendant's motions.

## III. THE DEFENDANT'S USE OF "The Dentists' Choice"

An initial description of the defendant's use of the subject phrase is required. Accompanying its summary judgment motion, the defendant submitted all of the forms of CREST advertising and promotion that have included the phrase "the dentists' choice." Although there are certainly variations among the different advertisements, they can be loosely separated into two categories. In the first set of advertisements, the phrase "The dentists' choice for fighting cavities," or similar phrase,[3] appears at the bottom of a print advertisement in which the CREST trademark is prominently featured in conjunction with varying textual comments. In the second set of advertisements, the phrase "The dentists' choice" appears without immediate modifiers at the bottom of a print advertisement. These advertisements also feature the CREST trademark and often make textual

3. Other advertisements refer to CREST as, *inter alia,* "The dentists' choice to help keep teeth tartar-free" or "The dentists' choice for fighting tartar."

4. The advertisement appended by the plaintiff to its complaint, for example, reads in pertinent part as follows:

--------------------
With nearly 50,000,000 recommendations, shouldn't you be using Tartar Control Crest?
The dentists' choice.
(picture of Crest toothpaste boxes)
Since Tartar Control Crest was introduced two years ago, dentists and hygienists have recommended Crest nearly 50,000,000 times.
--------------------

The advertisement cited by the plaintiff in its memorandum of law in opposition to the defendant's summary judgment motion as using the plaintiff's mark in a dominant fashion, separate and apart from the text is as follows:

--------------------
(Picture of Crest toothpaste box)

reference to dentists' recommendations and endorsements.[4] All CREST advertisements also include an endorsement by the American Dental Association.[5] "The dentists' choice" phrase never appears without the prominently displayed CREST trademark, explanatory text or the American Dental Association endorsement.

## IV. FAIR USE

 The defendant contends that it is entitled to summary judgment because its use of the phrase "the dentists' choice" has been fair use within the meaning of the Lanham Act. When a trademark has become incontestable, as the plaintiff's mark has, registration of the mark is conclusive evidence of the registrant's exclusive right to use the registered mark on the goods specified in the registration, subject only to certain, delineated defenses. 15 U.S.C. § 1115 (1988). Among those defenses is what is commonly referred to as the fair use defense. A defendant will not be liable for trademark infringement when

the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe to users the good or services of such party ...

People who use Tartar Control Crest feel good about cleanings in two very different ways. Going in because they've been brushing with a formula that helps prevent tartar buildup. And coming out because everything went so well. Both make it easy for more dentists to recommend Tartar Control Crest than any other tartar control toothpaste.

So whether you're coming or going, one thing's for sure. Tartar Control Crest helps make cleanings easier than if you used a regular cavity-fighting toothpaste. Either way that's something to smile about.
The Dentists' Choice.
--------------------

5. That endorsement provides that "'Crest has been shown to be an effective decay-preventive dentifrice that can be of significant value when used in a conscientiously applied program of oral hygiene and regular professional care.' Council on Dental Therapeutics, American Dental Association." In addition to appearing in CREST advertising, this endorsement is present on the packaging of CREST toothpaste and has been so included for many years.

**1062**

15 U.S.C. § 1115(b)(4) (1988). The fair use defense is available even when the plaintiff's mark has become incontestable. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 12 (2d Cir.1976); *Andy Warhol Enterprises, Inc. v. Time, Inc.,* 700 F.Supp. 760, 767 (S.D.N.Y.1988). Resolution of the defendant's motion, therefore, rests on a characterization of the use it has made of the phrase "the dentists' choice"—a determination that can be made on a motion for summary judgment. *See B & L Sales Assoc. v. H. Daroff & Sons, Inc.,* 421 F.2d 352, 354 (2d Cir.), *cert. denied,* 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970).

An analysis of fair use cases in this circuit leads us to believe that the defendant's use of "the dentists' choice" is not a trademark use. Our analysis begins with the case of *Jean Patou, Inc. v. Jacqueline Cochran, Inc.,* 201 F.Supp. 861 (S.D.N.Y. 1962), *aff'd,* 312 F.2d 125 (2d Cir.1963). In *Jean Patou,* the plaintiff was the owner of the registered trademark JOY for use on perfumes and toilet waters and sought to enjoin the defendant from using the phrase "Joy of Bathing" on its Flowing Velvet bath products. The defendant's product prominently featured the subject words, beneath the trademark Flowing Velvet, in the following manner: "JOY OF BATHING bathe in fragrance as you bathe away dry skin." *Id.* at 863. The court found for the defendant, holding in pertinent part that

> [t]he use of a word such as "joy" which is in the public domain is only unfair when a competitor uses it in its trademark or secondary sense. The competitor is free to use the word in its common or primary sense....
>
> While it is desirable to protect a person who has built up a public association with certain products under his trademark from having his business taken by somebody else, it is also undesirable to block the channels of expression by giving protection to everyone who may go out and appropriate an ordinary descriptive word for his own business use....

The use of the phrase JOY OF BATHING is designed to suggest the pleasure which will accompany the use of defendant's product in one's bath, and thus performs a descriptive function.

> To give the plaintiff the protection it seeks would be the first step in bestowing upon it a virtual monopoly of any phrase commencing with the word "joy". I therefore find that defendant's use of JOY OF BATHING on its Flowering Velvet bath preparation does not infringe the valid trade-mark JOY of the plaintiff.

*Id.* at 865 (citations omitted); *see also Jean Patou, Inc. v. Jacqueline Cochran, Inc.,* 312 F.2d 125, 127 (2d Cir.1963) (affirming district court with special emphasis on fact that defendant's use of JOY OF BATHING appeared in conjunction with other textual phrases).

In *B & L Sales Assoc. v. H. Daroff & Sons, Inc.,* 421 F.2d 352 (2d Cir.), *cert. denied,* 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970), the plaintiff owned the registered trademark COME ON STRONG for work clothing and leisure wear. The plaintiff filed a trademark infringement suit against the defendant who used the phrase "COME ON STRONG with Botany 500" followed by the phrase "tailored by Daroff" in the advertising and promotion of its Botany 500 line of clothing. *Id.* at 353. The court observed that

> [i]t is quite obvious that the phrase "Come On Strong" was intended only to describe the manner in which Botany 500 clothing would assist the purchaser in projecting a commanding, confident, "strong" image to his friends and admirers, and no intent to use the phrase in a trademark sense can be inferred from these promotional materials.

*Id.* Finding that the defendant's use was a descriptive, rather than a trademark usage, the court granted summary judgment in defendant's favor. " 'Come on Strong' ... is a common slang term, the general use of which plaintiff cannot prevent by registering it in connection with certain goods." *Id.* at 354.

The Second Circuit's decision in *Venetianaire Corp. v. A & P Import Co.,* 429 F.2d 1079 (2d Cir.1970) also offers guidance. Although the court ultimately found a likelihood of confusion between the defen-

dant's use of the mark "Hygienic" on its mattress covers and the plaintiff's registered trademark HYGIENT for the same product, the court noted that "[h]ad the defendant chosen a different trademark and then used word 'hygienic' in a sentence ... there would be no question of trademark infringement, for there the work would appear to be 'used fairly and in good faith only to describe to users' a characteristic of the goods." *Id.* at 1082.

Also instructive is *Field Enterprises Educ. Corp. v. Cove Indus., Inc.,* 297 F.Supp. 989 (E.D.N.Y.1969). In that case, the plaintiff, producer of "World Book Encyclopedia," held a registered trademark for WORLD BOOK. The defendant published an encyclopedia entitled "Illustrated World Encyclopedia." Rejecting the plaintiff's claim of trademark infringement, the court held that

> [i]t is undesirable that words in common use be given a monopoly under the trademark laws. For this reason, in determining whether there has been infringement, a distinction is made between primary and secondary uses. While the secondary use may be protected, the use of a common word in its primary sense may not be. Here, it is apparent that the word "World" has been used by the defendant in its primary sense, i.e., pertaining to the earth and its contents. There has been no trademark infringement.

*Id.* at 995 (citations omitted).

More recently, Judge Sweet of this district denied a motion for a preliminary injunction, in *Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. 477 (S.D.N.Y.1983), relying, in part, on the fair use defense. In that action, the plaintiff contended that the defendant's use of the phrase "lip repair cream" infringed its LIP–FIX trademark in connection with cosmetics. The court noted that the defendant used the phrase "lip repair cream" in connection with the marks "Revlon" and "European Collagen Complex" and the caption "lip treatment cream." Thus, the court found that "lip repair cream" was being used in its primary sense, precluding any finding of trademark infringement. *Id.* at 486.

Decisions from other federal courts echo the holdings of the courts of this circuit. In *Schmid Laboratories v. Youngs Drug Prods. Corp.,* 482 F.Supp. 14 (D.N.J.1979), the plaintiff, the distributor of EXCITA condoms bearing the registered trademark SENSI–RIBBED, sought to enjoin the defendant's use of the term "Ribbed" on its TROJAN condoms. The court found that the fair use defense justified issuance of summary judgment to the defendant.

> A general examination of defendant's package reveals that "RIBBED" is not used to "identify and distinguish" defendant's condoms from those marketed by other companies. Visual attention is not focused on the mark, but on the brand name, "TROJAN".... The fact that "RIBBED" is used by defendant "as a symbol to attract public attention" does not mean it is being used as a trademark. Virtually every aspect of a product's trade dress is intended to catch the eye of the purchaser. Unless attention is drawn to the particular word or term *as being indicative of source of origin* of that product, the term is not being used as a trademark.

*Id.* at 20–21 (footnote omitted) (emphasis in original). The court also rejected the plaintiff's contention that the display of RIBBED in over-sized, capital letters constituted a trademark use. *Id.* at 21; *see also Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. 477, 486 (S.D.N.Y.1983) (quoting *Schmid* ).

Finally, in *Clarke v. Joseph H. Dahlkemper, Inc.,* 468 F.Supp. 441 (W.D.Pa.1979), the court, relying primarily on Second Circuit caselaw, granted summary judgment to the defendant in a trademark infringement action based on the fair use defense. In *Clarke,* the plaintiff sought redress for an alleged infringement of its registered mark SAFE–T–BALL for use in connection with a children's ball game. The defendant marketed a product bearing the trademark FINGER CLINGERS, beneath which appeared the phrase "the safety ball target game." Observing that the defendant's use of the phrase "the safety ball target game" was clearly subordinate to the more

prominent display of their FINGER CLINGER trademark, the court concluded that the use was of a descriptive nature warranting summary judgment for the defendants. *Id.* at 442.

The sum total of this authority persuades us without doubt that the defendant's use of "the dentists' choice" is not a trademark infringement. The words are used in their primary sense to describe an important attribute of the CREST product—that it is recommended by dentists. Indeed, CREST has utilized a dentists theme in its advertising since the mid–1960's. The phrase is not used to identify the source of the product. Rather, the CREST mark, prominently displayed in all CREST advertising, clearly serves as the source indicator. "The dentists' choice" is often followed by explanatory phrases such as "for fighting cavities" and is always displayed in conjunction with other text. Moreover, the defendant has never used the plaintiff's mark DENTISTS CHOICE without the modifier "the." These factors indicate that the defendant's use is not a trademark use but rather is a descriptive or explanatory use.

Moreover, we are unconvinced by the plaintiff's allegations of bad faith. The plaintiff's primary proof of bad faith is that the defendant failed to abort its advertising campaign upon receipt of the plaintiff's cease and desist letter. "The fact that, prior to the commencement of the lawsuit, defendant did not abandon its project at plaintiff's suggestion, does not itself evidence a lack of good faith." *Andy Warhol Enterprises, Inc. v. Time, Inc.,* 700

F.Supp. 760, 766 (S.D.N.Y.1988). Although trademark registration concededly puts the world on constructive notice of the plaintiff's rights, that does not preclude use of the words contained in plaintiff's registered mark in their primary sense. "In choosing a highly descriptive mark, [the plaintiff] acted at its peril; where a second comer chooses a descriptive word to name its product, more than simple knowledge of the prior use is needed to show an intent to misappropriate goodwill." *E.R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc.,* 536 F.Supp. 523, 532 (S.D.N.Y.1982). There is absolutely no proof that the defendant acted in bad faith to capitalize on the plaintiff's trademark.

█ In sum, we find that the defendant's use of the phrase "the dentists' choice" was a fair use made in good faith and does not constitute a violation of the Lanham Act.[6] Consequently, the defendant is granted summary judgment on the first and second counts of the Complaint.

## V. LIKELIHOOD OF CONFUSION

█ Even were the fair use defense unavailable to the defendant, we would nonetheless grant summary judgment in the absence of a likelihood of confusion. Likelihood of confusion is an indispensable part of the plaintiff's claims of trademark infringement, false designation of origin and common law unfair competition. *Andy Warhol Enterprises, Inc. v. Time, Inc.,* 700 F.Supp. 760, 763 (S.D.N.Y.1988); *Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. 477, 482 (S.D.N.Y.1983).[7] The law with

---

**6.** The fair use defense applies statutorily to the plaintiff's claim under 15 U.S.C. § 1114(1) (1988). It has also been applied, however, to claims for false designation of origin arising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988). *See Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. 477, 485–86 (S.D.N.Y. 1983) (applying fair use defense in action under section 43(a)); *see also Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 796 n. 9 (5th Cir.1983) (" 'It would make no sense to characterize defendant's use as "fair" within the meaning of the Lanham Act for the purposes of a trademark infringement claim and at the same time characterize his use as "unfair" for the purpose of a section 43(a) unfair competition claim under the same statute.' " (quoting

*Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1190 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981))). Finding these authorities persuasive, we hold that the defense of fair use is applicable to a claim for false designation of origin under section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a) (1988).

**7.** Although the issue of likelihood of confusion is often reduced to a question of fact, summary judgment may nonetheless be appropriate "if the court is satisfied that the products or marks are so dissimilar that no question of fact is presented." *Universal City Studios, Inc. v. Nintendo Co.,* 746 F.2d 112, 116 (2d Cir.1984); *see also Warner Bros. Inc. v. American Broadcasting*

respect to likelihood of confusion in this circuit was laid down in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The eight factors established by *Polaroid* will be considered in turn.

### A. *Strength of the Mark*

■■■■ The strength of a trademark "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). The strength of a mark is evaluated by its tendency to fall into one of four categories. Ranging from weakest to strongest, the categories are: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). As applied to a toothbrush, the mark DENTISTS CHOICE is clearly descriptive. It is a mark that "describes the qualities or characteristics of a good." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). Indeed, Eugene Marton, who was president of Wonder Labs at the time the DENTISTS CHOICE toothbrushes were introduced, testified that, in designing the toothbrush, he consulted dentists, "taking their choice, their advice." Deposition of Eugene Marton at 35–36. As a descriptive trademark, therefore, DENTISTS CHOICE is entitled only to a limited range of protection. *Eli Lilly & Co.*, 577 F.Supp. at 484.

### B. *Similarity of the Marks*

■■■ The similarity of the trademarks goes to "the general impression conveyed to the purchasing public by the respective marks." *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir.1985). There are certain obvious similarities between the parties' uses of the phrase; the words "dentists" and "choice"

appear in both. The plaintiff's product, however, is labelled "Dentist's Choice" without any modifying words or text, while the plaintiff utilizes the phrase "the dentists' choice" in conjunction with other material. The presence of the article "the" distinguishes the use of the words, as does the presence of other marks and text in the defendant's advertisements. When the defendant's advertisements are viewed in their totality, we do not think that they convey the "same overall impression" as the plaintiff's product. *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir.1979). Consequently, we conclude that, while the marks certainly overlap, they are not so similar that a likelihood of confusion is inevitable.

### C. *Proximity of the Products*

This factor examines "the potential that purchasers may be confused as to the source of the goods due to the commercial, or competitive, proximity of the products." *Andy Warhol Enterprises, Inc. v. Time, Inc.*, 700 F.Supp. 760, 765 (S.D.N.Y.1988). The plaintiff's product is a toothbrush and the defendant's product is toothpaste. Although the defendant does not use "the dentists' choice" in connection with toothbrushes, toothpaste and toothbrushes are often linked in the minds of the consuming public. The plaintiff notes that many toothpaste manufacturers also manufacture toothbrushes under the same trademark. Thus, we conclude that, although the products are not directly competitive, a certain proximity exists due to the related nature of the products.

### D. *Bridging the Gap*

This factor looks to "whether the senior user of the mark is likely to enter the market in which the junior user is operating." *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1227 (2d Cir.1987). The plaintiff has not indicated any intention to enter the toothpaste market. Indeed, at the current

*Companies*, 720 F.2d 231, 246 (2d Cir.1983); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (2d Cir.1980); *B & L Sales Assoc. v. H.*

*Daroff & Sons, Inc.*, 421 F.2d 352, 354 (2d Cir.), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970).

time, the plaintiff is not even manufacturing its DENTISTS CHOICE toothbrush. Moreover, the plaintiff's trademark registration is limited to use of the mark on toothbrushes. Although the gap between toothbrushes and toothpaste is narrow, the plaintiff's apparent disinterest in manufacturing toothpaste counsels against a finding of likelihood of confusion.

### E. *Actual Confusion*

■ As proof of actual confusion, the plaintiff offers the testimony of Eugene Marton, former president of Wonder Labs, to the effect that former clients of the plaintiff telephoned Mr. Marton after seeing the CREST advertisements to ask if the DENTISTS CHOICE toothbrush line had been purchased by Procter & Gamble. This inquiry evidences interest in the relationship between the two companies, not confusion between the two products. *See Programmed Tax Sys., Inc. v. Raytheon Co.,* 439 F.Supp. 1128, 1131 (S.D.N.Y.1977); *see also Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195 (1st Cir.1980). While proof of actual confusion is not required, it is nonetheless significant that although the defendant has been utilizing "the dentists' choice" in its advertising and promotion since July 1986, the plaintiff has been unable to point to any instances of actual consumer confusion.

### F. *Bad Faith*

As we discussed above, there is no evidence whatsoever that the defendant has acted in bad faith.

### G. *Quality of Junior User's Product*

There can be little question that the defendant's product is of high quality. There has been no testimony as to the quality of the plaintiff's DENTISTS CHOICE toothbrushes. The plaintiff's product, was, however, produced by a well-respected toothbrush manufacturer and we will assume that the DENTISTS CHOICE toothbrush was also of high quality.

### H. *Sophistication of the Consumers*

■ As a general rule, sophistication of the consumer is a factor that will weigh against a finding of likelihood of confusion. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1228 (2d Cir.1987). Although the parties have put forth no evidence on this factor, we think that the average consumer is discriminating when it comes to personal hygiene products. In light of the fact that neither the products nor the marks are identical, this factor decreases the likelihood of confusion. *Id.*

### I. *Conclusion*

■ The *Polaroid* factors are not the equivalent of a trademark infringement litmus test.

The question of likelihood of confusion is always one that is unique to each set of facts. The court must determine whether, in light of the facts, the use of defendant's mark is likely to cause confusion among the consuming public as to the origin or source of the goods in question. *Mead Data Central v. Toyota Motor Sales, U.S.A., Ltd.,* 702 F.Supp. 1031, 1039 (S.D.N.Y.1988), *rev'd on other grounds,* 875 F.2d 1026 (2d Cir.1989). On balance, the plaintiff has not successfully demonstrated that the defendant's use of "the dentists' choice" has created likelihood of confusion in the marketplace. The plaintiff's mark is descriptive of its product and therefore entitled to only limited protection. When the defendant's use of "the dentists' choice" is analyzed in the context of its advertisements, any semblance of similarity is dispersed. Although the products share the same general market, i.e., oral hygiene, the plaintiff does not appear to have a present intention to enter the dentifrice field. The defendant has acted in good faith and there is no evidence of actual customer confusion. In sum, we conclude that the plaintiff cannot establish a likelihood of confusion. Consequently, even in the absence of the fair use defense, summary judgment in favor of the defendant on the trademark claims would be warranted.

## VI. DILUTION

Count three of the Complaint asserts a claim under New York's anti-dilution statute. That statute provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y.Gen.Bus.Law § 368–d. Although a likelihood of confusion is not required under this statute, to succeed on its claim, the plaintiff must show that its mark possesses a distinctive quality capable of dilution and that the defendant's use of the mark creates a likelihood of dilution. *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989). "Distinctiveness for dilution purposes often has been equated with the strength of a mark for infringement purposes." *Id.* As we have previously decided, the plaintiff's mark is descriptive of its product. As a descriptive trademark, DENTISTS CHOICE has not acquired such a distinctive quality that the defendant's conduct threatens dilution of the plaintiff's mark. *Id.* at 1033 (Sweet, D.J., concurring) ("A trademark has a distinctive quality if it is 'distinctive, arbitrary, fanciful or coined' rather than 'generic or descriptive.'" (quoting *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977))). We cannot conclude that the plaintiff's trademark has acquired that level of distinctiveness that would warrant a finding of dilution. Consequently, the defendant is entitled to summary judgment on count three of the Complaint.

## VII. UNFAIR COMPETITION

Count four of the Complaint alleges common law unfair competition. The standard for unfair competition under New York law is very similar to the standards of the Lanham Act. *See Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 497 n. 1 (2d Cir.1962); *E.R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc.*, 536 F.Supp. 523, 526 (S.D.N.Y.1982). Thus, the defense that the defendant's use of the mark is purely descriptive and not as a trademark equally precludes recovery for common law unfair competition. *See American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979) (descriptive usage precluded conclusion of misappropriation), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). Moreover, our conclusion that the plaintiff cannot demonstrate a likelihood of confusion similarly precludes an action based on unfair competition. *Andy Warhol Enterprises, Inc. v. Time, Inc.*, 700 F.Supp. 760, 763 (S.D.N.Y.1988). The defendant is entitled to summary judgment on count four of the complaint.

## VIII. CONCLUSION

In sum, the defendant's motion for summary judgment is granted in its entirety.[8] The plaintiff's cross-motion for summary judgment is denied. The clerk will enter judgment for the defendant.

SO ORDERED.

---

**8.** Having ruled in favor of the defendant on the above-discussed grounds, we do not consider the defendant's challenge to the legality of the plaintiff's trademark.